**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Petitioner,**

v.

**Ronald H. TRAVER, executor of the
Estate of Mary E. Davidson,
Respondent.**

**No. 96–1201.**

Supreme Court of Texas.

Argued April 24, 1997.

Decided Dec. 31, 1998.

Anne Gardner, Lori R. Thomas, Melinda Ruth Burke, Fort Worth, for Petitioner.

William L. Kirkman, Fort Worth, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice HECHT, Justice ENOCH, Justice SPECTOR, Justice OWEN, Justice BAKER, and Justice HANKINSON join.

We withdraw our opinion of August 25, 1998, and substitute the following in its place. We overrule the motions for rehearing of State Farm and Ronald Traver.

Ronald Traver, an estate executor, argues that the attorney provided by decedent Mary Davidson's liability insurer, State Farm, committed malpractice in defending a personal injury claim against Davidson, resulting in a judgment in excess of policy limits. Traver sued State Farm for negligence, breach of its duty to defend, breach of the *Stowers* duty,[1] breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act and Insurance Code. The trial court granted summary judgment for State Farm on all causes of action. The court of appeals, holding that an insurer is responsible for the conduct of the attorney it provides to defend an insured, reversed and remanded the malpractice claim, along with the DTPA and Insurance Code claims relating to the malpractice, for trial. 930 S.W.2d 862. The court of appeals further held, however, that Traver could not recover for breach of the *Stowers* duty, for breach of the duty of good faith and fair dealing, or for any claim under the DTPA or Insurance Code relating to those duties. Because we hold that an insurer is not vicariously liable for the malpractice of an independent attorney it selects to defend an insured, we reverse the judgment of the court of appeals and render judgment for State Farm on all claims based on vicarious liability. Further, because Traver has not separately applied for writ of error, the court of appeals' judgment on the *Stowers* claim and good faith claim (and related statutory claims) is final.

We remand the cause to the trial court to allow Traver to pursue any remaining claims that he pled or might plead against State Farm.

## I

In January 1989, Mary Davidson collided with Calvin Klause in an automobile accident. Mary Jordan, a passenger in Klause's car, was severely injured. By coincidence, both Davidson and Klause were insured by State Farm Mutual Automobile Insurance Company. Each had an automobile liability policy with a per-person liability limit of $25,000.

Jordan sued both drivers in one action. State Farm retained separate attorneys to represent Davidson and Klause. After settlement attempts failed, the case went to trial. The jury found Davidson 100 percent responsible for the accident. The trial court rendered judgment on the verdict, awarding Jordan $375,000, plus about $100,000 in prejudgment interest, against Davidson. The record does not disclose whether this judgment was appealed or satisfied.

Davidson died shortly after trial. Her executor, Ronald Traver, brought this present action against State Farm. Traver alleged that State Farm was negligent, breached its duty to defend Davidson in the Jordan lawsuit, breached its *Stowers* duty, breached a duty of good faith and fair dealing, and violated the Deceptive Trade Practices Act and article 21.21 of the Insurance Code. Traver specifically alleged that Charles Bradshaw, the attorney retained by State Farm to represent Davidson in the Jordan lawsuit, committed malpractice by failing to attend several key depositions and by failing to offer a meaningful defense at trial. Traver further alleged that State Farm deliberately orchestrated this malpractice to avoid potential *Stowers* liability to Klause arising from the settlement negotiations.[2] Thus, Traver al-

---

1. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm.App.1929, holding approved) (recognizing cause of action by policyholder against liability insurer for negligently refusing a settlement offer within policy limits).

2. Jordan initially made a joint settlement demand to both defendants for their combined poli-

cy liability limits ($50,000), plus Klause's underinsured motorist coverage ($20,000). State Farm refused, offering instead Davidson's policy liability limit ($25,000), Klause's underinsured motorist coverage ($20,000), but only $5,000 of Klause's liability coverage. Jordan refused this counteroffer. Although State Farm later increased its offer to include Klause's full liability

leges, State Farm acted in its own self-interest by shifting responsibility from Klause to Davidson. Traver also sued Bradshaw, but the attorney filed Chapter 7 bankruptcy proceedings shortly thereafter, and the trial court severed the claims against him.

The trial court rendered summary judgment for State Farm on all claims. The court of appeals reversed in part. It held that, under the language of *Ranger County Mutual Insurance Co. v. Guin*, 723 S.W.2d 656, 659 (Tex.1987), State Farm was responsible for any injury caused by the malpractice of the attorney it retained for Davidson. 930 S.W.2d at 871. Because State Farm had not negated the existence of such malpractice, the court of appeals remanded Traver's negligence claim for trial, along with any claims under the DTPA or Insurance Code relating to this negligence. *Id.* at 871–72. The court of appeals further held, however, that State Farm had conclusively negated Traver's *Stowers* claim, *id.* at 868, and that an insurer owes no duty of good faith to its insured in the context of a third-party liability claim. *Id.* at 870. *See Maryland Ins. Co. v. Head Indus. Coatings & Servs.*, 938 S.W.2d 27, 28 (Tex.1996).[3]

## II

■ Davidson's policy with State Farm required State Farm either to defend or settle covered third-party liability claims. The policy also required Davidson to "[c]ooperate with [State Farm] in the investigation, settlement or defense of any claim or suit." Under this contractual obligation to defend, State Farm selected Bradshaw, an independent attorney who was not a State Farm employee, to represent Davidson against Jordan's claims, and State Farm paid Bradshaw's bills. Traver argues that, under these circumstances, State Farm is vicariously responsible for the attorney's conduct. We disagree.

■ In determining whether a principal is vicariously responsible for the conduct of an agent, the key question is whether the principal has the right to control the agent with respect to the details of that conduct. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964). We have recognized that a liability policy may grant the insurer the right to take "complete and exclusive control" of the insured's defense. *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved); *see also Continental Cas. Co. v. Huizar*, 740 S.W.2d 429, 434 (Tex. 1987); Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer, Insured, and Insurance Defense Counsel*, 73 NEB. L. REV. 265, 269 (1994) ("Because of its financial interest in the effective resolution of a claim, the insurer has a contractual right to control its insured's defense."); Sweeney, *Tank v. State Farm: Conducting a Reservation of Rights Defense in Washington*, 11 U. PUGET SOUND L. REV. 139, 163 (1987) ("When defending unconditionally, the insurer has complete control of the defense."). Here, the standard form Texas Personal Auto Policy provides that the insurer "will settle or defend, as [it] consider[s] appropriate, any [covered] claim or suit ..." The insurer's control of the insured's defense under this policy thus includes authority to accept or reject settlement offers and, where no conflict of interest exists, to make other decisions that would normally be vested in the client, here the insured. However, even assuming that the insurer possesses a level of control comparable to that of a client, this does not meet the requisite for vicarious liability.

■ A defense attorney, as an independent contractor, has discretion regarding the day-to-day details of conducting the defense, and is not subject to the client's control regarding those details. *See* RESTATEMENT (SECOND) OF AGENCY, § 385, cmt. a. While the attorney may not act contrary to the client's wishes, the attorney "is in complete charge of the minutiae of court proceedings and can properly withdraw from the case, subject to

coverage (thus meeting Jordan's original demand), Jordan also refused this offer.

**3.** Although the court of appeals' opinion predated our decision in *Head,* the court of appeals

anticipated this result based on the Court's writings in *Texas Farmers Ins. Co. v. Soriano,* 881 S.W.2d 312 (Tex.1994).

the control of the court, if he is not permitted to act as he thinks best." *Id.* Moreover, because the lawyer owes unqualified loyalty to the insured, *see Employers Cas. Co. v. Tilley,* 496 S.W.2d 552, 558 (Tex.1973), the lawyer must at all times protect the interests of the insured if those interests would be compromised by the insurer's instructions. Under these circumstances, the insurer cannot be vicariously responsible for the lawyer's conduct. *See Ingersoll–Rand Equip. Corp. v. Transportation Ins. Co.,* 963 F.Supp. 452, 454–55 (M.D.Pa.1997) ("The attorney's ethical obligations to his or her client, the insured, prevent the insurer from exercising the degree of control necessary to justify the imposition of vicarious liability."); *Merritt v. Reserve Ins. Co.,* 34 Cal.App.3d 858, 110 Cal. Rptr. 511, 526 (Cal.Ct.App.1973) ("In our view independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance."); *Aetna Cas. & Sur. Co. v. Protective Nat'l Ins. Co.,* 631 So.2d 305, 306–07 (Fla.Ct.App.1993) (adopting *Merritt's* reasoning); *Feliberty v. Damon,* 72 N.Y.2d 112, 531 N.Y.S.2d 778, 527 N.E.2d 261, 265 (N.Y.1988) ("The insurer is precluded from interference with counsel's independent professional judgments in the conduct of the litigation on behalf of its client."); *Brown v. Lumbermens Mut. Cas. Co.,* 90 N.C.App. 464, 369 S.E.2d 367, 372 (N.C.Ct.App.1988), *aff'd,* 326 N.C. 387, 390 S.E.2d 150 (1990); *see also* 1 WINDT, INSURANCE CLAIMS AND DISPUTES § 4.40, at 275 (3d ed. 1995) ("There is ... no theoretical justification for imputing a defense counsel's negligence to the insurer."); Sweeney, *supra* at 163 ("The client, as principal, should turn to his attorney, as agent, for relief if the attorney acts improperly, since the attorney is supposed to be independent of the insurer's influence and must act as though the policyholder is paying the bills.").[4]

Traver, like the court of appeals, relies on *Ranger County Mutual Insurance Company v. Guin,* 723 S.W.2d 656 (Tex.1987), in asserting liability against the insurer. We stated in *Ranger* that an insurer's duty to its insured "extends to the full range of the agency relationship." *Id.* at 659. We upheld a jury instruction stating that the

> [attorney retained by the insurer] is deemed, under the law, to be the sub-agent of the insurance company. As such, the insurance company is as responsible to the insured for the conduct of the sub-agent with reference to the litigation as the insurance company is for its own conduct. Therefore, the insurance company is liable to the insured for damages caused to the insured, if any, by the negligence, if any, of the sub-agent in conducting the affairs of the insured with reference to the litigation.

*Id.* at 658. If this language were the holding of *Ranger,* it would support Traver's position. As we noted in *American Physicians Insurance Exchange v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994), however, the only negligence claim at issue in *Ranger* was a *Stowers* claim for negligent failure to settle. Indeed, the Court expressly recognized in *Ranger* that there was "no contention that Ranger was negligent in investigation or trial of the [underlying personal injury suit]." *Ranger,* 723 S.W.2d at 659. We concluded in *Garcia* that *Ranger's* broad language about the scope of the insurer's responsibilities was *dicta. See Garcia,* 876 S.W.2d at 849. Although reaffirming the *Stowers* duty, we emphasized that *Ranger* was a *Stowers* case only, and that "evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the [*Stowers* issue]." *Id.* We thus did not hold in *Ranger* that an insurer is vicariously responsible for the conduct of the attorney it selects to defend an insured.

In sum, we hold that a liability insurer is not vicariously responsible for the conduct of an independent attorney it selects to defend an insured. Traver thus cannot recover

---

**4.** *But see Boyd Bros. Transp. Co. v. Fireman's Fund Ins. Cos.,* 729 F.2d 1407, 1409–10 (11th Cir.1984); *Smoot v. State Farm Mut. Auto. Ins. Co.,* 299 F.2d 525, 530 (5th Cir.1962); *Pacific Employers Ins. Co. v. P.B. Hoidale Co.,* 789 F.Supp. 1117, 1122–23 (D.Kan.1992); *Continental Ins. Co. v. Bayless & Roberts, Inc.,* 608 P.2d 281, 294 (Alaska 1980); *Stumpf v. Continental Cas. Co.,* 102 Or.App. 302, 794 P.2d 1228, 1231–32 (Or.Ct.App.1990).

against State Farm on any common law or statutory claim based solely on Bradshaw's conduct.

## III

■ We disagree, however, with State Farm's contention that the court of appeals limited its remand to claims based on vicarious liability and that Traver's failure to bring a separate application waived any claims based on State Farm's own misconduct. We further reject State Farm's contention that our decision in *Maryland Insurance Company v. Head Industrial Coatings & Services, Inc.*, 938 S.W.2d 27 (Tex.1996) necessarily limits Traver's damages to the policy limits and defense costs.

In *Head*, we said it was unnecessary to recognize a duty of good faith and fair dealing in the context of third-party liability insurance because the duty of reasonable care adopted in *Stowers* already offered greater protection for the insured. *Head*, 938 S.W.2d at 28–29; *see Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 319 (Tex.1994)(Cornyn, J. concurring). We further concluded that rights granted under *Stowers* together with rights under the contract of insurance fully protected the insured against an insurance company's erroneous refusal to defend a third-party liability claim. *Head*, 938 S.W.2d at 29. The factual circumstances alleged in the present case are quite different from those in *Head*, however. Here, the plaintiff's allegations are not that the insurer merely refused a defense, but that the insurer consciously undermined the insured's defense.

\* \* \* \* \*

We render judgment for State Farm on all claims based on vicarious liability. Because Traver has not challenged the court of appeals' judgment on the *Stowers* duty, the duty of good faith and fair dealing, or any statutory claim relating to those duties the court of appeals' judgment regarding those claims is final. We remand the cause to the trial court to allow Traver to pursue any remaining claims that he pled or might plead against State Farm.

Justice GONZALEZ filed a concurring and dissenting opinion, in which Justice Abbott joins.

Justice GONZALEZ, concurring and dissenting, joined by Justice ABBOTT.

The broad issue in this case is when, if ever, is an insurance company responsible for the malpractice of an attorney the company hires to defend its insured. The Court holds that an insurance company has no vicarious responsibility, and remands this cause to the trial court without indicating what other theories of liability might be viable. State Farm contends it owes no duties to its insured other than *Stowers*[1] duties, and therefore cannot be liable under Traver's DTPA or Insurance Code causes of action. In my opinion, an insurance company may be **directly** liable for its own conduct if it causes harm in the course of defending the insured, whether the theory is based on statute or applicable common law. Furthermore, there may be exceptional situations in which insurance companies should be held **vicariously** liable even though they did not participate directly in the malpractice. Finally, I note that the rules we developed to deal with the ethical problems and economic tensions inherent in the tripartite relationship between insurer, insured and insurance defense counsel do not fit today's market driven reality. One way to avoid the problems presented in this case is to allow third parties to bring a direct cause of action against insurance companies. I will address these issues in turn.

## I

In order to put the issues before us in context, we need to briefly review the underlying facts that gave rise to this lawsuit. Mary Davidson was involved in a two-car, head-on collision with a car driven by Calvin Klause. Mary Jordan, a passenger in Klause's car, was severely injured. As it happened, both Davidson and Klause were

---

1. *See G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 546–47 (Tex. Comm. App.1929, holding approved) (recognizing a cause of action by insured for insurer's negligent rejection of a settlement offer within policy limits).

insured by State Farm and there were differences in coverage on their respective policies. Jordan sued both drivers in the same lawsuit. The jury found that Davidson was solely responsible for the accident and Jordan obtained a judgment against Davidson. Davidson died after the trial and her executor, Ronald Traver, brought the present suit against State Farm alleging breach of its duty to defend, negligence in the handling of the claim against Davidson, breach of duty of good faith and fair dealing, and DTPA and Insurance Code violations. The trial court granted summary judgment for State Farm, and the court of appeals reversed and remanded. 930 S.W.2d 862.

## II

Traver's theory is that State Farm deliberately caused malpractice in the defense of one of its insureds to protect itself from excess liability of one of its insureds involved in the same litigation. Traver contends that State Farm orchestrated a vigorous defense of the insured with *Stowers* exposure and an inept defense of its other insured. The pleadings are broad enough to include vicarious and direct liability theories. Among the claims the Court remands are Traver's allegations that State Farm's conduct violates the DTPA and the Insurance Code. From the very nature of the tripartite relationship between the insurer, the insured, and the insurance defense counsel, an insurer, as the party that retains counsel for the insured and pays the lawyer's bills, has both the opportunity and the motive to exert improper influence over that attorney. *See, e.g.*, Mattias, et al., *Tripartite Relationships and Reservation of Rights Letters: The Need for Independent Counsel*, 516 PLI/Lit 253 (1994) ("[T]he relationship between counsel and insurer often is supported not only by defense counsel's strong financial interest in pleasing the insurer but also is 'strengthened by real friendships.'") (quoting 2 MALLEN & SMITH, LEGAL MALPRACTICE § 23.3 at 364 (3rd ed.1989)). If the insurer uses its influence with the retained attorney to the detriment of the insured, the insurer's liability to the insured for its own conduct is direct.

As previously noted, Traver pled that State Farm breached a common law duty of good faith and violated the DTPA and Insurance Code. While Traver also pled in the trial court that State Farm breached its duty to defend Davidson, it is not clear whether he intended to assert a breach of contract action in addition to his tort and statutory claims. In any event, the court of appeals did not remand a breach of contract action, and Traver does not complain about the court of appeals' judgment. Under these circumstances, there is no breach of contract action still pending. However, there may be circumstances wherein an insurer would breach its contractual duty to defend by retaining incompetent counsel or failing to adequately fund the defense.

## III

State Farm asserts two procedural obstacles to a direct liability claim. State Farm argues that Traver did not plead any direct misconduct by State Farm, only vicarious responsibility, and that the court of appeals' judgment remanding the case only included vicarious liability. I disagree on both counts. First, Traver has consistently claimed that State Farm directly engaged in harmful conduct. Traver contends in this Court that "State Farm's counsel's wrongful actions were in large part directed by State Farm to save it from certain exposure to Klause for significant damages under *Stowers*." Likewise, Traver alleged the following in the trial court:

> In order to reduce Defendant's own exposure in [the Jordan suit], Defendant failed to defend Mary E. Davidson during the pretrial and trial, while vigorously defending its other insured, Calvin C. Klause, thus causing the judgment in the trial to be entered solely against Mary E. Davidson. This was in Defendant State Farm's selfish interest and not in the interest of Ms. Davidson. Previously State Farm had wrongfully failed to pay to Mary Jordan within a reasonable time, after Ms. Jordan had so demanded, the policy limits of Mr. Klause's policy. Such action subjected State Farm to significant exposure under the doctrine commonly referred to in Texas as the Stowers Doctrine.... In its

handling of Mary Jordan's claim against Mary Davidson, and in its handling of Mary Davidson's defense in the suit filed by Mary Jordan, Defendant and Defendant's agents, acting within the scope of their authority, engaged in an unconscionable course of action by failing to protect Mary Davidson's interest for its own self interest.

Thus, Traver has contended all along that State Farm itself committed misconduct by orchestrating the malpractice for its own financial benefit.

Second, I disagree with State Farm's argument that the court of appeals' judgment remanded the DTPA and Insurance Code claims as *vicarious liability* claims only, and therefore Traver was required to file his own application for writ of error in this Court to preserve any claim for direct liability. *See Archuleta v. International Ins. Co.*, 667 S.W.2d 120, 123 (Tex.1984) (holding that a party who seeks a different and more favorable judgment in this Court than that rendered by the court of appeals must file his or her own application for writ of error). Our holding in *Archuleta* does not require this result in this case. Even if State Farm is correct about the scope of the court of appeals' judgment, this Court's judgment remanding the DTPA and Insurance Code claims based on State Farm's own conduct is not more favorable to Traver than the court of appeals' judgment allowing Traver to establish liability vicariously.

Regarding the merits, State Farm does not argue that Traver's allegations of interference, if true, do not constitute a violation of the DTPA or the Insurance Code, or that State Farm factually negated Traver's allegations. Rather, State Farm argues that, under *Maryland Ins. Co. v. Head Indus. Coatings and Services, Inc.*, 938 S.W.2d 27 (Tex.1997), a liability insurer owes its insured no duties other than the *Stowers* duties, including the duties otherwise imposed by the DTPA and the Insurance Code. I disagree.

The issue in *Head* was whether a liability insurer owed its insured a common law duty of good faith and fair dealing to investigate and defend claims by a third party against its insured. While we said that "Texas law rec-

ognizes only one tort duty in this context, that being the [*Stowers* duty]," 938 S.W.2d at 28, we did not purport to strip liability insureds of their statutory protections under the DTPA and Insurance Code. We expressly adopted the reasoning of the concurring opinion in *Texas Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312, 318 (Tex.1994) (Cornyn, J. concurring), *see* 938 S.W.2d at 28, where the concurring justices concluded that "the *Stowers* doctrine is the exclusive *common-law* remedy available to an insured *in this situation*." 881 S.W.2d at 319 (emphasis added). Although in *Head* we vacated the treble damages awarded by the court of appeals under the Insurance Code, *see* 938 S.W.2d at 29, the court of appeals premised this statutory recovery on breach of the common law duty of good faith and fair dealing, as incorporated into the Insurance Code under Board Order 18663. *See Maryland Ins. Co. v. Head Indus. Coatings and Servs.*, 906 S.W.2d 218, 225–27 (Tex.App.—Texarkana 1995), *reversed*, 938 S.W.2d 27 (Tex.1996). I do not read the opinion in *Head* as eliminating all common-law duties between the insurer and the insured. Our statement that "Texas law recognizes only one tort duty *in this context*, that being the duty in Stowers...." *Head*, 938 S.W.2d at 28, was in the context of duties arising out of the relationship created by the contract of insurance. In my opinion, this statement does not apply to duties that do not depend on the existence of a special relationship. In particular, I do not believe that the per curiam opinion in *Head* was meant to eliminate statutory causes of action such as the DTPA and the Insurance Code. Thus, our holding that the insured had no common law cause of action necessarily negated the Insurance Code claim. Here, on the other hand, Traver has pled direct violations of the DTPA and the Insurance Code.

### IV

The DTPA protects "consumers." *See* TEX. BUS. & COM.CODE § 17.50. Subject to the limitations of section 17.45(4) of the Business and Commerce Code, the purchaser of an insurance policy is a consumer. *See id.* § 17.50(a)(4) (allowing DTPA cause of action for violations of Article 21.21 of the Insur-

ance Code); *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex.1988) (recognizing DTPA cause of action by insured). Article 21.21 of the Insurance Code allows a private cause of action by "[a]ny person who has sustained actual damages caused by another's engaging in [certain prohibited acts and practices.]" TEX. INS.CODE art. 21.21, § 16(a). While this language does not extend to third parties suing an insured, *see Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149–50 (Tex.1994), Davidson, the party on whose behalf Traver seeks relief, was State Farm's insured. Both the DTPA and Article 21.21 are to be liberally construed, *see* TEX. BUS. & COM.CODE § 17.44(a); TEX. INS. CODE art. 21.21, § 1(b), and there is no indication under either statute that liability insureds are excluded from protection.

I do not express an opinion about whether Traver has stated a claim under any particular provision of the DTPA or Insurance Code. Neither party has briefed or argued this issue. As noted, however, State Farm has offered no meritorious challenge to the court of appeals' judgment remanding these claims to the extent they are based on State Farm's own misconduct.

## V

I also believe that common-law causes of action that do not depend on a special relationship survive the per curiam opinion in *Head.* For example, tortious interference with contract or business relations is a violation of a duty owed regardless of the relationship between the parties. Allegations that an insurance company directly exerted improper influence over the insured's attorney may state a claim of tortious interference with the attorney-client relationship. Some courts have recognized that the tortious interference cause of action is applicable to the attorney-client relationship. *See* Annotation, *Liability in Tort for Interference with Attorney–Client Relationship*, 90 A.L.R.4th 621, 632 (1991 and Supp.1997). *See also Stuessy v. Byrd, Davis & Eisenberg*, 381 S.W.2d 126, 129 (Tex.Civ.App.—Austin 1964, no writ). Although we have not been able to find a reported case reviewing a claim for tortious interference under similar facts, the facts of

this case may lend themselves to such an allegation. In fact, State Farm admitted to the possibility in its briefing before this Court: "[a] cognizable claim might exist against an insurer ... for wrongfully interfering in defense counsel's relationship with the insured."

There are four elements to a tortious interference claim: 1) an attorney-client relationship existed; 2) the interference was willful and intentional; 3) proximate cause; and 4) actual damage. *Cf. ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997); *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996). In most insurer-insured disputes, it would not be appropriate to attempt to prove that the insurer has willfully injured its insured, since this would be akin to the insurer putting a gun to its own head. Clearly, such a claim may not be asserted for mere incompetence on the part of the attorney selected or for a miserly defense. However, when there is a conflict between the interests of the insured and the insurer, as is alleged in this case, in which the insurer has a financial incentive to see to it that the insured fares poorly in the litigation, a claim for tortious interference may arise.

## VI

Although, as I have said, an insurance company's own actions harming the insured are actionable, the same harm may be caused by more subtle improper influences over the retained attorney. The Court's holding that an insurance company has no responsibility for the attorneys it selects to represent the insured is overly broad because it is based on an idyllic and perhaps naive view of the current status of insurance defense practice. The Court reasons that an insurance company has no vicarious responsibility because it has no legal right to control the attorney's conduct. However, in many cases this professional paradigm does not fit today's world. This rule is appropriate when an insurance company maintains an arms-length relationship with the attorney it chooses to represent a policy holder. But it ignores the last decade's evolving trends in modern insurance defense practices.

The duty to defend in a liability policy at times makes for an uneasy alliance. The insured wants the best defense possible. The insurance company, always looking at the bottom line, wants to provide a defense at the lowest possible cost. The lawyer the insurer retains to defend the insured is caught in the middle. There is a lot of wisdom in the old proverb: He who pays the piper calls the tune. The lawyer wants to provide a competent defense, yet knows who pays the bills and who is most likely to send new business. This so-called tripartite relationship has been well documented as a source of unending ethical, legal, and economic tension. *See, e.g.,* Robert B. Gilbreath, *Caught in a Crossfire Preventing and Handling Conflicts of Interest: Guidelines for Texas Insurance Defense Counsel,* 27 TEX. TECH. L.REV. 139 (1996); Douglas R. Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer and Insured, and Insurance Defense Counsel,* 73 NEB. L. REV. 265 (1994); Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?,* 72 TEX. L.REV. 1583 (1994).

In 1973, we clearly define the tripartite relationships in terms of professional ethics. *See Employers Cas. Co. v. Tilley,* 496 S.W.2d 552, 558–59 (Tex.1973). Under *Tilley,* the lawyer owes unqualified loyalty to the policy holder. *Id.* at 558. Defining the attorney's allegiance was designed to make everyone's role in the relationship clear. This rule has existed for twenty-five years and serves well in perhaps a majority of cases. It allows the attorney to provide a single-minded defense to the insured. That was my view when I wrote in *Ranger County Mutual Insurance Co. v. Guin,* 723 S.W.2d 656, 660–63 (Tex. 1987) (Gonzalez, J., dissenting). In *Ranger,* I argued that insurance companies should not have the full spectrum of vicarious liability that goes with a true principal-agent relationship. *Id.* at 663. I adhere to that view today, but it may be necessary to modify the rule in *Tilley* to account for current trends in insurance defense law practice.

Since *Tilley* and *Ranger,* in part because of tort reform of the 1990s, the business of insurance and the practice of insurance de-

fense have undergone revolutionary changes. In the last two decades, the insurance industry has seen fierce competition, a changing investment climate, and constant pressures to contain costs. To weather changing market forces and dramatic shake-outs within the industry, companies have changed the way they operate. I am concerned that these changes have weakened the protection *Tilley* envisioned.

For example, one trend that has serious ethical implications is the so-called "captive law firm." A captive law firm may take any number of forms, but the key feature is its almost total dependence on a limited number of clients. At one extreme is the firm that is little more than a front for a single insurance company. It may have all the appearances of a regular firm. However, some if not all of the office personnel, including the attorneys, are the insurance company's salaried employees. The sole reason for a captive law firm's existence is to provide legal services at a low cost to the insurance company. I venture to say that in most cases, the policy holder is not aware of this arrangement. As we previously discussed, in these situations, it is probably impossible for an attorney to provide the insured the unqualified loyalty *Tilley* requires. You bite the hand that feeds you at your own peril. As the Supreme Court of Michigan noted, defense counsel faces

> a great temptation to favor [the insurance company] who pays the bills and will send further business, and where long-standing personal relations may exist.... An attorney employed by an insurer to represent an insured may be confronted with serious conflicts of interest issues almost from the outset of the relationship.

*Atlanta Int'l Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294, 297, n. 6 (Mich.1991) (citations omitted).

Captive law firms are not the only setting in which the insurance company's influence over the attorney can compromise or at least call into question the attorney's professional responsibilities to the client, the insured. Tort reform has perceptibly reduced the amount of insurance defense work to go around. Competition for insurance work

weakens the defense lawyer's hand while it allows insurance companies to demand ever-stringent cost containment measures. In some insurance companies a case administrator, who may not even be a lawyer, decides legal strategy and tactics in the policy holder's defense. Some insurance companies impose billing restrictions and subject the lawyers to billing audits. These audits threaten the attorney-client privilege. Some companies even dictate whether an attorney or a paralegal does some of the work.

Cost containment is not bad in itself. However, measures designed to produce a no-frills defense can easily result in only a token defense. I am concerned that defense lawyers may be reluctant to resist cost-cutting measures that detrimentally affect the quality of the insured's defense. There is a real risk that these efforts at cost containment compromise a lawyer's autonomy and independent judgment on the best means for defending an insured.

In short, the market-based, economic paradigm of today's world makes the rules our Court and the Legislature have developed in a non-market paradigm suspect, ineffective, and obsolete. The lawyers are under tremendous pressure trying to serve two masters. As one court observed:

> [W]e cannot escape the conclusion that it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest that existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interest of his real client—the one who is paying his fee and from whom he hopes to receive future business—the insurance company. Although it has perhaps become trite, the biblical injunction found in Matthew 6:24 retains a particular relevancy in circumstances such as these, "No man can serve two masters...."

*United States Fidelity & Guar. Co. v. Louis A. Roser Co.,* 585 F.2d 932, 938 n. 5 (8th Cir.1978).

Whether insureds are getting the value and the level of representation they are paying for deserves serious, thorough study. I do not mean to imply that all insureds are entitled to a "Cadillac" defense when all they paid for is a "Chevrolet." My concern, however, is that because of recent market changes in insurance defense practice, some insureds who have paid for a "Chevrolet" defense are getting a "Yugo" defense. It may be that the Legislature is best suited to resolve these issues. Because of the nature of appellate review, our Court has limited means to determine how pervasive the problem might be. A problem can fester for years before we see it in the cases that reach our Court through the appellate process. The Legislature, however, has the power to hold hearings and determine the scope of the problem. I commend this important issue to the next session of the Legislature.

## VII

If I am wrong, and a cause of action for vicarious liability is not viable, then a departure from the long held doctrine opposing direct actions against the insurance company would remove the very conflict of interest that led to this dispute in the first place. In states that have adopted this system, the injured party sues the insurance company directly, bypassing the insured. Under this alternative, the attorney would clearly represent only one party, the insurance company. Other states have followed this approach for decades without harm to the fairness of their judicial system. *See Southern Farm Bureau Cas. Ins. Co. v. Robinson,* 236 Ark. 268, 365 S.W.2d 454, 457 (Ark.1963); *Written v. Travelers Indem. Co.,* 304 So.2d 715, 718 (La.Ct. App.1974); *Bossert v. Douglas,* 557 P.2d 1164, 1167 (Okla.Ct.App.1976); *State Auto Property and Cas. Ins. Co. v. Gibbs,* 314 S.C. 345, 444 S.E.2d 504, 506 (S.C.1994); *Storm v. Nationwide Mut. Ins. Co.,* 199 Va. 130, 97 S.E.2d 759, 762 (Va.1957); *Rauch v. American Family Ins. Co.,* 115 Wis.2d 257, 340 N.W.2d 478, 482 (Wis.1983) (all acknowledging that an injured third party's rights become vested at the time of the injury).

In addition, many states, including Texas, have long since abandoned the strict privity requirement and adopted some form of direct action against an insurance company, usually after a judgment has been rendered against

the insured. *See State Farm County Mut. Ins. Co. of Tex.*, 768 S.W.2d 722, 723 (Tex. 1989); *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex.1969) (allowing third party beneficiaries of a liability insurance party to enforce the policy directly against the insurer after securing a judgment or agreement against the insured). It is not a great step from the abandonment of the privity requirement to adoption of direct action, and it would solve the problems at hand.

## VIII

I would hold that Traver is not precluded from pursuing his DTPA and Insurance Code claims against State Farm and give him an opportunity to try to make a case for vicarious liability against State Farm. Also in a proper case, breach of contract and tortious interference with a contract may be viable causes of action to redress the harm caused in these types of cases. I commend these issues to the legislature for their consideration.