TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00870-CV







Lynda Cole; ReMax Heritage Real Estate; and Jack Cathey, Appellants


v.



Century 21 Real Estate Corporation, Appellee





FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-98-0999-C, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING






 Appellants Lynda Cole and ReMax Heritage Real Estate(1) (together "Cole") appeal
the district court's summary judgment in favor of appellee Century 21 Real Estate Corporation
("Century 21"). We will affirm the district court's summary judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Century 21 and Larry Jolley entered into a franchise agreement dated December
31, 1993. As Century 21's franchisee, Jolley operated Century 21 Professionals, a real-estate
company in San Angelo. In 1998 Jolley purchased the business of "Home Team Realtors," a
former ReMax of Texas ("ReMax") franchise. Jolley's purchase left Cole as the only operator of
a ReMax real-estate franchise in San Angelo. Jolley's purchase included two former Home Team
Realtors telephone numbers. The local telephone directory continued to show the numbers as
being those of "ReMax of San Angelo" until Cole's franchisor, ReMax, caused them to be
removed from the directory. ReMax then sent Jolley a letter requesting "that he truthfully report
to callers, intending to call ReMax, that the telephone numbers . . . were not associated with a
ReMax business." However, the telephone numbers remained operational, and Jolley continued
to use them. ReMax, Century 21, and Jolley exchanged letters concerning the situation, and, in
response to a letter from ReMax about the continued control of the telephone numbers, Century
21's general counsel informed ReMax that Century 21 would "not allow [its] franchisee[s] . . . to
use the intellectual property of other[s]" and that it had requested that Jolley "direct his immediate
attention to the amicable resolution of [the] matter." At a point after this exchange of
correspondence, Cole's ReMax Heritage Real Estate ceased doing business.

 In September 1998 Cole sued Jolley, Century 21 Professionals, and Century 21 for
intentional interference with prospective contracts, defamation,(2) common-law fraud, and violations
of the statutory-fraud provisions of the business and commerce code. Century 21 filed a motion
for summary judgment.(3) See Tex. R. Civ. P. 166a(c), (i). Cole's response to Century 21's
motion included the affidavit of Ann Moffitt. In her affidavit, Moffitt alleged that she called one
of the two purchased telephone numbers and spoke to an individual who represented that Jolley
owned both a ReMax and a Century 21 business.(4) Century 21 objected to Cole's summary-judgment response and asked the district court to strike Moffitt's affidavit because it included
inadmissible hearsay and failed to lay the proper foundation for admissibility of a telephone
conversation. See id. 166a(f). The district court sustained Century 21's objections and granted
its motion for summary judgment. 


DISCUSSION

 On appeal, Cole asserts that Century 21 had the right to control the manner in
which Jolley, a franchisee of Century 21 operating under the name of Century 21 Professionals,
answered his telephones. Cole also asserts that she presented sufficient evidence on each element
of her claims for intentional interference with prospective contracts and fraud. Finally, Cole
argues that Moffitt's affidavit was duly authenticated, non-hearsay, and therefore permissible
evidence. 

 When, as here, the trial court's summary judgment does not specify or state the
grounds relied upon, we must affirm the court's judgment if any of the summary-judgment
grounds are meritorious. Bradley v. State ex rel. White, 990 S.W.2d 243, 247 (Tex. 1999) (citing
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)). Century 21 moved for summary
judgment on both traditional and no-evidence grounds. Because we hold that Century 21 could
not be bound by Jolley's actions, we will address only the portion of Century 21's motion that
sought a traditional summary judgment. See Tex. R. App. P. 47.1 (directing that opinions should
be as brief as practicable to decide issues necessary to final disposition).

 In her first issue, Cole urges that the district court erred in granting summary
judgment because Century 21 "had the right to control Jolley's business promotion activities." The
movant for summary judgment has the burden of showing that there is no genuine issue of material
fact, and it is entitled to summary judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985). In deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true; every
reasonable inference will be indulged in favor of the nonmovant with any doubts resolved in its
favor. Id. The dispositive issue is not whether the summary-judgment proof raises a fact issue,
but whether the summary-judgment proof establishes as a matter of law that there is no genuine
issue of material fact. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). 

 In order for Cole to prevail on any of her causes of action against Century 21,
Century 21 must be held vicariously liable for the acts of its franchisee Jolley. See State Farm
Mut. Auto. Ins. Co. v. Traver, 980 S.W.2d 625, 627 (Tex. 1998). In determining whether a
principal is vicariously responsible for the conduct of an agent, the key question is whether the
principal has the right to control the agent with respect to the details of that conduct. Id. at 627;
Newspapers, Inc. v. Love, 380 S.W.2d 582, 589-91 (Tex. 1964). If there is no right of control
over the matters material to the pending lawsuit, there is no agency relationship as to those
matters. O'Bryant v. Century 21 S. Cent. States, Inc., 899 S.W.2d 270, 271-72 (Tex.
App.--Houston [14th Dist.] 1995, no writ). We look to the franchise agreement between Century
21 and Jolley to determine Century 21's right of control over Jolley. See Love, 380 S.W.2d at
589-90; O'Bryant, 899 S.W.2d at 271-72.

 The franchise agreement specifically states that Jolley is "an independent contractor"
and that nothing in the agreement "shall be construed so as to create an agency relationship, a
partnership or joint venture." In addition, the agreement provides as follows: "Use of Service
Mark. Franchisee agrees that throughout the term of this Agreement it will operate exclusively
under franchisee's CENTURY 21 trade name with respect to all advertising, promotion and
communications, including, but not limited to, telephone answering . . . ." (Emphasis added.) 
Although the franchise agreement between Century 21 and Jolley requires Jolley to follow
guidelines in answering the telephone and advertising his business to the public, the agreement
does not give Century 21 any control over discussions between Jolley or his employees and the
public. Cole directs us to certain provisions of Century 21's "Policy and Procedures Manual,"
portions of Jolley's deposition testimony, and correspondence from Century 21 concerning Jolley's
alleged deviation from the franchise agreement as proof of Century 21's right to control the
telephone operations of Jolley. None shows that Century 21 had control, either contractually or
in practice, over Jolley's telephone use after answering his office phones. The letter from Century
21's general counsel states that Century 21 would "not allow [its] franchisee[s] . . . to use the
intellectual property of other[s]" and that it had contacted Jolley and requested that he "direct his
immediate attention to the amicable resolution of [the] matter." The letter does not intimate
control over telephone usage nor does it prove that Jolley was using intellectual property belonging
to Cole. Cole presented no summary-judgment evidence that either Jolley or any of his employees
ever answered the telephone in a way contrary to the Century 21 franchise agreement. Century
21 has satisfied its summary-judgment burden of showing that it had no right to control Jolley as
to the matters raised by Cole. We overrule Cole's first issue.

 Assuming without deciding that Moffitt's affidavit is admissible and properly
authenticated, it does not reflect that her telephone call to Jolley's office was answered in a way
contrary to Century 21's franchise agreement, that Century 21 in any way attempted to control the
contents of conversations between Jolley's employees and potential customers or that Jolley was
using intellectual property belonging to Cole. Moffitt states that the telephone call she placed was
answered "Century 21 Professionals" and that when she asked whether she was calling "a ReMax
or a Century 21," the individual responded that she "had called a Century 21 business." These
statements provide no support for Cole's position that Century 21 controlled Jolley in matters
material to this suit. We overrule Cole's second issue.


CONCLUSION

 Having overruled Cole's issues, we affirm the district court's summary judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel 

Affirmed

Filed: December 7, 2000

Do Not Publish

1. Jack Cathey was also a plaintiff in district court and filed a notice of appeal. No brief was
filed on his behalf, nor has he appeared before this Court. Therefore, we affirm the district court
judgment as to Cathey. 
2. The defamation cause of action was based on a letter written by Jolley to the Texas Real
Estate Commission concerning Cathey. Cathey complained in district court that the letter exposed
him to "financial injury and damaged reputation." See supra note 1. 
3. Century 21 asserted that summary judgment was proper based on either traditional or no-evidence grounds.
4. The exact language of Moffitt's affidavit is as follows:

 

In 1998, I looked-up a Remax phone number from the local telephone directory. 
When I called the number, an individual answered the phone for Century 21
Professionals. When I asked if I was calling a Remax or a Century 21, the individual
answered that I had called a Century 21 business. However, the same individual also
told me that Larry Jolley had purchased a Remax and that Larry Jolley owned both
a Remax and a Century 21. When I asked for a specific Remax agent by name, the
individual told me that he was located at the "other Remax."


 franchise agreement between Century
21 and Jolley to determine Century 21's right of control over Jolley. See Love, 380 S.W.2d at
589-90; O'Bryant, 899 S.W.2d at 271-72.

 The franchise agreement specifically states that Jolley is "an independent contractor"
and that nothing in the agreement "shall be construed so as to create an agency relationship, a
partnership or joint venture." In addition, the agreement provides as follows: "Use of Service
Mark. Franchisee agrees that throughout the term of this Agreement it will operate exclusively
under franchisee's CENTURY 21 trade name with respect to all advertising, promotion and
communications, including, but not limited to, telephone answering . . . ." (Emphasis added.) 
Although the franchise agreement between Century 21 and Jolley requires Jolley to follow
guidelines in answering the telephone and advertising his business to the public, the agreement
does not give Century 21 any control over discussions between Jolley or his employees and the
public. Cole directs us to certain provisions of Century 21's "Policy and Procedures Manual,"
portions of Jolley's deposition testimony, and correspondence from Century 21 concerning Jolley's
alleged deviation from the franchise agreement as proof of Century 21's right to control the
telephone operations of Jolley. None shows that Century 21 had control, either contractually or
in practice, over Jolley's telephone use after answering his office phones. The letter from Century
21's general counsel states that Century 21 would "not allow [its] franchisee[s] . . . to use the
intellectual property of other[s]" and that it had contacted Jolley and requested that he "direct his
immediate attention to the amicable resolution of [the] matter." The letter does not intimate
control over telephone usage nor does it prove that Jolley was using intellectual property belonging
to Cole. Cole presented no summary-judgment evidence that either Jolley or any of his employees
ever answered the telephone in a way contrary to the Century 21 franchise agreement. Century
21 has satisfied its summary-judgment burden of showing that it had no right to control Jolley as
to the matters raised by Cole. We overrule Cole's first issue.

 Assuming without deciding that Moffitt's affidavit is admissible and properly
authenticated, it does not reflect that her telephone call to Jolley's office was answered in a way
contrary to Century 21's franchise agreement, that Century 21 in any way attempted to control the
contents of conversations between Jolley's employees and potential customers or that Jolley was
using intellectual property belonging to Cole. Moffitt states that the tel