ACCEPTED
13-15-00362-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/22/2015 1:05:53 PM
Dorian E. Ramirez
CLERK

# No. 13-15-00362-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/22/2015 1:05:53 PM
DORIAN E. RAMIREZ
Clerk

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI-EDINBURG, TEXAS

MCALLEN HOSPITALS, L.P., MCALLEN HOSPITALS, L.P. D/B/A
MCALLEN MEDICAL CENTER, MCALLEN MEDICAL CENTER,
MCALLEN HOSPITALS, L.P. D/B/A SOUTH TEXAS HEALTH SYSTEM
AND SOUTH TEXAS HEALTH SYSTEM,

*Defendants – Appellants*,

**v.**

MARIO RODRIGUEZ AND LUDIVINA IRACHETA, INDIVIDUALLY
AND AS NEXT FRIENDS OF XXXXX XXXXXXXXX, A MINOR,

*Plaintiffs – Appellees*.

On Appeal from the 389th District Court, Hidalgo County, Texas
Trial Court Cause No. C-2334-12-H

## BRIEF OF APPELLEES

**MITHOFF LAW**
Richard Warren Mithoff
State Bar No. 14228500
rmithoff@mithofflaw.com
Joseph R. Alexander, Jr.
State Bar No. 00995150
jalexander@mithofflaw.com
Warner Hocker
State Bar No. 24074422
whocker@mithofflaw.com
500 Dallas, Suite 3450
Houston, TX 77002
(713) 654-1122
(713) 739-8085 (Fax)

**BECK REDDEN LLP**
Russell S. Post
State Bar No. 00797258
rpost@beckredden.com
Patrice B. Childress
State Bar No. 24059569
pchildress@beckredden.com
Kyle Lawrence
State Bar No. 24087895
klawrence@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010-2010
(713) 951-3700
(713) 951-3720 (Fax)

*Counsel for Plaintiffs – Appellees*

*Oral Argument Not Requested*

# IDENTITY OF PARTIES AND COUNSEL

In addition to the counsel listed in Appellant's Brief, please note the appearance of the following additional counsel for Appellees Mario Rodriguez and Ludivina Iracheta, Individually and as Next Friends of Xxxxx Xxxxxxxxx, A Minor:

Kyle Lawrence
State Bar No. 24087895
klawrence@beckredden.com
BECK REDDEN LLP
1221 McKinney, Suite 4500
Houston, TX  77010-2010
(713) 951-3700
(713) 951-3720 (Fax)

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ...................................................................i

TABLE OF CONTENTS ................................................................................. ii

INDEX OF AUTHORITIES ...............................................................................v

STATEMENT OF THE CASE ..............................................................................v

STATEMENT REGARDING ORAL ARGUMENT .........................................................ix

ISSUES PRESENTED .....................................................................................x

INTRODUCTION ..........................................................................................1

STATEMENT OF FACTS ..................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................15

STANDARD OF REVIEW: ABUSE OF DISCRETION ................................................16

ARGUMENT AND AUTHORITIES .....................................................................17

I.    MMC waived its appeal by failing to challenge all grounds that
      support the trial court's ruling. ..........................................................17

      A.    On appeal, MMC argues only that it was not timely served
            with expert reports. .................................................................18

      B.    Plaintiffs asserted another ground to deny the motion to
            dismiss, which MMC fails to challenge on appeal. ..........................18

      C.    The Court should affirm the trial court's ruling based on the
            unchallenged ground. ...............................................................19

II.   The trial court correctly found that MMC waived any objection to
      the timeliness of service. ...................................................................19

      A.    Chapter 74 rights can be waived. ................................................20

      B.    MMC's affirmative representations and subsequent silence
            each support a finding of waiver. ...............................................20

ii

III.    Plaintiffs satisfied Section 74.351 by serving the expert reports on counsel authorized to accept them on behalf of MMC. .................................23

    A.    Gonzalez and Castillo were granted express authority to act as counsel for MMC for purposes of accepting the expert reports. ..................................................................................................23

        1.    The insurer, JUA, had the right to choose counsel and control the defense on behalf of MMC. ...................................23

        2.    JUA engaged Castillo and Gonzalez on behalf of MMC and authorized them to accept service of Chapter 74 reports. ................................................................24

        3.    An enforceable Rule 11 agreement allowed Plaintiffs to serve the reports on Gonzalez and Castillo ...........................25

    B.    MMC's last-ditch arguments are unavailing. ......................................25

        1.    The manner of service is immaterial in this case. ......................26

        2.    There was no "attorney in charge" to be served and the parties agreed to an alternative form of service. .................26

        3.    MMC's other arguments are irrelevant. ...................................28

    C.    MMC's evidentiary objections are unpreserved and insubstantial. ......................................................................................28

        1.    Any evidentiary complaint has been waived by inadequate preservation and inadequate briefing. ....................29

        2.    The authenticity objection was invalid. .................................30

        3.    The hearsay objection was invalid. .........................................30

        4.    MMC has not demonstrated that any error was harmful. ..................................................................................31

CONCLUSION AND PRAYER FOR RELIEF ...........................................................32

CERTIFICATE OF SERVICE .................................................................................34

CERTIFICATE OF COMPLIANCE ..........................................................................35

iii

APPENDIX

Order denying MMC's Motion to Dismiss (CR 402) ............................ TAB A

DX 11 (3 RR 136)................................................................................ TAB B

Email from PX2 (3 RR 40).................................................................. TAB C

PX8 (3 RR 74-75)................................................................................ TAB D

Email from PX2 (3 RR 45)...................................................................TAB E

PX1 (3 RR 6-7).....................................................................................TAB F

Excerpts of Steve Gonzalez Testimony (2 RR 43-44, 52, 57-58,
76-77).................................................................................................. TAB G

iv

# INDEX OF AUTHORITIES

| CASE | PAGE(S) |
|---|---|

*Am. Transitional Care Ctrs. v. Palacios*
    46 S.W.3d 873 (Tex. 2001)...............................................................................16

*Britton v. Texas Dep't of Criminal Justice*
    95 S.W.3d 676 (Tex. App.—Houston
    [1st Dist.] 2002, no pet.) ..................................................................................17

*Columbia Rio Grande Regional Hosp. v. Stover*
    17 S.W.3d 387 (Tex. App.—Corpus Christi
    2000, no pet.) ....................................................................................................29

*Daniels v. Yancey*
    175 S.W.3d 889 (Tex. App.—Texarkana
    2005, no pet.) ....................................................................................................31

*In re Elamex, S.A. de C.V.*
    367 S.W.3d 879 (Tex. App.—El Paso
    2012, no pet.) ..............................................................................................17, 19

*Excel Corp. v. Porras*
    14 S.W.3d 307 (Tex. App.—Corpus Christi
    1999, pet. denied)..............................................................................................30

*Fulp v. Miller*
    286 S.W.3d 501 (Tex. App.—Corpus Christi
    2009, no pet.) ......................................................................................16, 26, 27

*Goforth v. Bradshaw*
    296 S.W.3d 849 (Tex. App.—Texarkana
    2009, no pet.) ....................................................................................................26

*Gonzalez v. Villarreal*
    251 S.W.3d 763 (Tex. App.—Corpus Christi
    2008, pet. denied)..............................................................................................29

*Inscore v. Karnes County Sav. & Loan Ass'n*
    787 S.W.2d 183 (Tex. App.—Corpus Christi
    1990, no writ)....................................................................................................17

*Jernigan v. Langley*
111 S.W.3d 153 (Tex. 2003) ...................................................................20

*In re M.S.*
115 S.W.3d 534 (Tex. 2013) ...................................................................31

*Memorial Hermann Hosp. Sys. v. Hayden*
No. 01-13-00154-CV, 2014 WL 2767128
(Tex. App.—Houston [1st Dist.] Jun. 17, 2014,
pet. denied) (mem. op.)...........................................................................22

*Motor Vehicle Bd. v. El Paso Indep.*
*Auto Dealers Ass'n, Inc.*
1 S.W.3d 108 (Tex. 1999)........................................................................20

*Northeast Texas Staffing v. Ray*
330 S.W.3d 1 (Tex. App.—Texarkana
2010, no pet.) .........................................................................................26

*Northern County Mut. Ins. Co. v. Davalos*
140 S.W.3d 685 (Tex. 2004) ...................................................................23

*Offenbach v. Stockton*
285 S.W.3d 517 (Tex. App.—Dallas
2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011) .............................................28

*Rosemond v. Al-Lahiq*
331 S.W.3d 764 (Tex. 2011) ...................................................................16

*In re Sheppard*
197 S.W.3d 798 (Tex. App.—El Paso
2006, orig. proceeding)...........................................................................22

*Spiegel v. Strother*
262 S.W.3d 481 (Tex. App.—Beaumont
2008, no pet.) .........................................................................................26

*State Farm Mut. Auto Ins. Co. v. Traver*
980 S.W.2d 625 (Tex. 1998) ...................................................................23

*In re TCW Global Project Fund II, Ltd.*
274 S.W.3d 166 (Tex. App.—Houston
[14th Dist.] 2008, orig. proceeding) .......................................................19

*Tenneco, Inc. v. Enterprise Prods. Co.*
925 S.W.2d 640 (Tex. 1996) ...............................................................22

*Tex. Dep't of Transp. v. Able*
35 S.W.3d 608 (Tex. 2000)..................................................................31

*U.S. Lawns, Inc. v. Castillo*
347 S.W.3d 844 (Tex. App.—Corpus Christi
2011, pet. denied).........................................................................17, 19

*Uduma v. Wagner*
No. 01-12-00796-CV, 2014 WL 4259886
(Tex. App.—Houston [1st Dist.] Aug. 27, 2014,
pet. denied) (mem. op.)........................................................................21

*Ulico Cas. Co. v. Allied Pilots Ass'n*
262 S.W.3d 773 (Tex. 2008) ...............................................................20

*Walker v. Gutierrez*
111 S.W.3d 56 (Tex. 2003)..................................................................16

## RULES

Tex. R. App. P.
Rule 33.1(a).................................................................................26, 29
Rule 38.1 ............................................................................................29
Rule 38.3 ......................................................................................18, 19
Rule 44.1(a)........................................................................................31

Tex. R. Civ. P. 11.....................................................................................25

Tex. R. Evid.
Rule 801(e)(1)(B) ..............................................................................31
Rule 801(e)(2)(D) ..............................................................................30
Rule 803(1) ........................................................................................31
Rule 901 .............................................................................................30

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case:* | Health-care liability case involving permanent injury to a brain-damaged child. CR 80-88. |
| *Trial Court:* | 389th District Court, Hidalgo County (Lopez, J.) |
| *Course of Proceedings:* | Plaintiffs originally sued individual physicians and later added McAllen Medical Center as a defendant ("MMC"). MMC's insurer, JUA, engaged counsel to seek an agreement extending its answer deadline. Plaintiffs agreed. CR 30; 3 RR 33 (PX 2). |
| | Plaintiffs then requested a reciprocal agreement that Chapter 74 reports could be served on the counsel who had negotiated the extension of the answer date. PX 7. JUA authorized counsel to accept service, PX 2, DX 11, and counsel on both sides entered into a Rule 11 agreement to that effect. CR 264. |
| | Subsequent to these events, new counsel appeared and filed an answer on behalf of MMC. CR 208-10. New counsel initially raised an objection based on the timeliness of service of the Chapter 74 reports, CR 211-18, but withdrew that objection once he was apprised of the Rule 11 agreement. |
| | For 18 months, the case proceeded with discovery. But on the eve of trial, MMC moved to dismiss on the ground that the Chapter 74 reports had not been served timely—denying the Rule 11 agreement between Plaintiffs and prior counsel. CR 249-54. |
| | In an extraordinary hearing, prior counsel for MMC testified that he had been authorized to enter into the Rule 11 agreement and offered documentary proof. 2 RR 43-44, 51-52, 57-58; PX 2. |
| *Trial Court Disposition:* | The trial court denied MMC's motion to dismiss. CR 402 (**Tab A**). But MMC took advantage of its interlocutory appeal and invoked the automatic stay of trial. CR 403-07. |

## STATEMENT REGARDING ORAL ARGUMENT

Given the straightforward and dispositive waiver issues in this appeal, coupled with the compelling record evidence supporting the trial court's ruling, Plaintiffs-Appellees do not believe oral argument is necessary. But if the Court believes argument would be helpful, we welcome the opportunity to participate.

# ISSUES PRESENTED

1. Should the order be affirmed because MMC failed to challenge all independent grounds to support the trial court's order?

2. If not, did the trial court abuse its discretion by finding that MMC waived any objection to the timeliness of the Chapter 74 expert reports?

3. If not, did the trial court abuse its discretion by finding that Plaintiffs served MMC's attorney with the Chapter 74 reports within the 120-day deadline, pursuant to a Rule 11 agreement?

# INTRODUCTION

*I am passionately proud of my profession. Therefore, "My word is my bond."*

\*\*\*

*I will always be conscious of my duty to the judicial system.*

\*\*\*

*I will advise my client that we will not pursue tactics which are intended primarily for delay.*

\*\*\*

*I will advise my client that we will not pursue any course of action which is without merit.*

\*\*\*

*A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings.*

THE TEXAS LAWYER'S CREED: A MANDATE FOR PROFESSIONALISM
(Nov. 7, 1989)

This is a tale of two lawyers. One regarded the obligations set forth in the Texas Lawyer's Creed as articles of faith, and risked a great deal to uphold them. The other regarded those obligations as mere obstacles to be overcome.

The first lawyer was authorized to act on behalf of a defendant and entered into a Rule 11 agreement with opposing counsel. When that lawyer was replaced, the second lawyer tried to renounce the agreement, then honored it for 18 months, then reneged on it again just days before trial in order to secure an automatic stay. It is difficult to image a more craven abuse of the statute requiring expert reports in health-care liability cases.

Our legal system simply cannot function, and our courts cannot do justice, unless the word of a lawyer can be trusted. This appeal tests that principle.

## STATEMENT OF FACTS

In 2011, a 21-month-old boy was injured when struck by a motor vehicle. While he was in the care of doctors and nurses at McAllen Medical Center ("MMC"), the child's condition began to deteriorate. The nurses noted the downward progression of his condition, but no one provided medical intervention to halt the downward spiral. CR 80-85.

Today, that little boy is permanently brain-damaged and completely blind. He depends entirely on his parents and others for all the basic necessities of life— including feeding by tube, bathing, dressing, mobility, hygiene, and all bowel and bladder management. CR 85-87.

MMC has no interest in those facts, nor does it have any interest in the facts surrounding the real history of this litigation. Its "Statement of Facts" is simply a barren procedural timeline, which aims to create the false impression that this case involves a run-of-the-mill failure to serve Chapter 74 expert reports on time.

Nothing could be further from the truth. This case involves a stunning effort to renege on a Rule 11 agreement on the eve of trial in order to deny the little boy and his family their day in court (not to mention the financial resources they need). This Statement of Facts will recount the course of the litigation, the agreements between Plaintiffs and MMC's counsel, MMC's effort to renege on its agreements, and the hearing on MMC's motion to dismiss where the truth came to light.

*Prior counsel accepts Chapter 74 reports on behalf of MMC*

Plaintiffs filed suit in August 2012, alleging negligence claims against various health-care providers. Their original petition named several defendants, including RGV Pediatric Care, P.A. (RGV), but did not name MMC. CR 30-32. McAllen attorneys Steve Gonzalez and Edward Castillo of Gonzalez Castillo, LLP answered for RGV; a year later, they moved for summary judgment. DX 11.

Around that same time, in August 2013, Plaintiffs filed an amended petition and added MMC as a defendant. CR 80-83.

Because Gonzalez had a long history of representing MMC, it was expected that he would appear for MMC if the pending claims against his other client, RGV, were dismissed on summary judgment. 2 RR 45-46, 51-52; 3 RR 10-12 (PX 2). To that end, MMC's insurance carrier, Joint Underwriters Association ("JUA"), instructed Gonzalez Castillo to obtain a Rule 11 Agreement extending the answer deadline for MMC until after a ruling on the RGV summary judgment motion:

| | |
|---|---|
| From: | Sally Stewart <sstewart@tmliua.com> |
| Sent: | Tuesday, August 20, 2013 2:07 PM |
| To: | Edward Castillo |
| Cc: | Fadden, Coleen (Coleen.Fadden@uhsinc.com); Steve Gonzalez |
| Subject: | RE: Mario Rodriguez, Jr. |

Edward –

Thanks for this information - a written agreement from plaintiff counsel regarding extending the Answer date would be appreciated.

Once I have received the served documents and had an opportunity to review them in conjunction with the JUA policy, I will contact you and/or Steve to discuss the status of the PA's MSJ and the possible formal assignment of defense.

Thanks again,

Sally

*See* 3 RR 33 (PX 2); *see also id.* at 34-35 (PX 2), 135-36 (DX 11).

3

Consistent with these marching orders, Castillo wrote to Plaintiffs' counsel Joe Alexander of the Mithoff Law Firm on September 3, 2013:

> The hospital has asked us to secure a Rule 11 agreement regarding the answer date for the hospital defendants. Attached please find a Rule 11 reflecting the agreement.

3 RR 68 (PX 5); *see also* 2 RR 82.

Plaintiffs agreed to extend the answer deadline and both parties executed the Rule 11 Agreement attached to Castillo's e-mail. That agreement provided that the answer deadline would be extended until two weeks after the trial court ruled on RGV's summary judgment motion:

**RULE 11 AGREEMENT**

Dear Joe:

Please allow the following to serve as a Rule 11 memorializing your agreement to extend McAllen Hospitals, L.P., McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Medical Center, McAllen Hospitals, L.P. d/b/a South Texas Health System, and South Texas Health System's (hospital Defendants) deadline to answer the Plaintiffs' First Amended Original Petition in the above-referenced matter. Plaintiffs agree to extend the hospital Defendants' deadline to file an Answer until two (2) weeks after the Court has provided a written ruling on Defendant RGV Pediatric Critical Care, P.A.'s Motion for Summary Judgment.

If this accurately reflects our agreement, please indicate by signing below.

Thank you.

Respectfully,                    Agreed to on this _____ day of September, 2013:

GONZALEZ CASTILLO, LLP           MITHOFF LAW FIRM

By:_____             By:_____
   Edward J. Castillo                Joe Alexander

PLAINTIFF'S EXHIBIT
6  8-5-15
C233412H

3 RR 70 (PX 6).

4

A month later, Plaintiffs' counsel e-mailed Castillo and Gonzalez to confirm that they had authority to accept service of the Chapter 74 expert reports on behalf of MMC. He wrote:

From: Joseph Alexander [mailto:JAlexander@mithofflaw.com]
Sent: Wednesday, October 09, 2013 5:01 PM
To: Edward Castillo; Steve Gonzalez
Subject: Rodriguez

Since you have requested an extension on the time to answer on behalf of McAllen Medical Center, I assume you can accept service of the Chapter 74 reports on its behalf as well. Please let me know immediately.

Castillo replied promptly (communicating through his secretary, Annette Word)[1] and promised to request such authority:

From: Annette Word <AWord@valleyfirm.com>
Sent: Wednesday, October 09, 2013 5:17 PM
To: Joseph Alexander
Subject: RE: Rodriguez

Joe, I will contact the hospital and urge them to allow us to accept service of your Chapter 74 reports to the hospital. I will try and get back to you by tomorrow.

Thank you.


Edward J. Castillo
GONZALEZ CASTILLO, LLP
1317 E. Quebec Ave.
McAllen, Texas 78503
(956) 618-0115
FAX: (956) 618-0445
ecastillo@valleyfirm.com

3 RR 72 (PX 7).

As promised, Castillo immediately wrote to JUA to determine whether the insurance carrier wanted Gonzalez Castillo to accept the Chapter 74 expert reports on behalf of MMC:

---

[1] Several of the e-mails involved in this case were sent by Annette Word, Gonzalez and Castillo's legal assistant, who routinely drafted and sent correspondence for Gonzalez and Castillo. *See* 2 RR 91-92.

5

```
From:              Annette Word
Sent:              Wednesday, October 09, 2013 5:22 PM
To:                Sally Stewart (sstewart@tmliua.com)
Cc:                Leslie Krafve (lkrafve@tmliua.com)
Subject:           Mario Rodriguez, Jr.


Dear Sally:

We are still waiting for the Court to rule on RGV Pediatric Critical Care, P.A.'s Motion for Summary Judgment. We have not yet
received a ruling from the Court, but we are hopeful that we will soon. As you know, we secured a Rule 11 agreement extending the
hospital (and all related entities)'s deadline to file an answer pending the Court's ruling on the MSJ. Today we received an inquiry from
Plaintiffs' counsel asking us whether we could accept service of Plaintiffs' Chapter 74 reports to the hospital. We anticipate that he has
the reports ready. Please advise whether you would like us to accept service of these reports, at which point we will need to evaluate
them for adequacy with Chapter 74.

Should you have any questions, please feel free to give me or Steve a call.

Thank you.
```

3 RR 39 (PX 2). The very next day, "MMC's insurance carrier, JUA, instructed [Castillo] to advise Plaintiffs' counsel that Gonzalez Castillo, LLP was authorized to accept service of Plaintiffs' Chapter 74 expert reports as to MMC." 3 RR 136 (DX 11) (**Tab B**); *see also* 2 RR 108-09 (admitting affidavit testimony).

Castillo acknowledged these instructions in an email on October 10, 2013, which was admitted during the evidentiary hearing:

```
From: Annette Word
Sent: Thursday, October 10, 2013 2:44 PM
To: Sally Stewart (sstewart@tmliua.com)
Cc: Leslie Krafve (lkrafve@tmliua.com); steveg
Subject: FW: Mario Rodriguez, Jr.

Dear Sally:

It was good talking with you just now. In line with our conversation, this will confirm that we will advise Plaintiffs'
counsel that we will accept service of Plaintiffs' Chapter 74 expert reports as to the hospital entities.

Upon receipt of the reports, we will forward those to you, and we can discuss the sufficiency/adequacy of the reports.

Thank you.

Edward J. Castillo
GONZALEZ CASTILLO, LLP
1317 E. Quebec Ave.
McAllen, Texas 78503
(956) 618-0115
FAX: (956) 618-0445
ecastillo@valleyfirm.com
```

3 RR 40 (PX 2) (**Tab C**).

Castillo then told Plaintiffs' counsel "we can accept service of Plaintiffs' Chapter 74 reports as they pertain to the hospital entities." 3 RR 43 (PX 2).

The next day, on October 11, 2013, Plaintiffs served Gonzalez Castillo with the Chapter 74 expert reports. Plaintiffs' counsel and Gonzalez Castillo executed a Rule 11 Agreement confirming Gonzalez Castillo's authority to accept the reports, as well as their actual receipt of the reports. The agreement stated:

> This will confirm that you [attorneys Gonzalez and Castillo] have been authorized by [MMC] to accept service of the above expert reports and curricula vitae from Plaintiffs . . . as required by Civil Practice and Remedies Code Section 74.351.
>
> This will also acknowledge and confirm that these reports and curricula vitae have been received by you on behalf of [MMC] and that such receipt by you constitutes proper service on such entities as required by Civil Practice and Remedies Code Section 74.351.
>
> Please acknowledge that you have been authorized to accept service of these reports and curricula vitae on behalf of [MMC] by signing below and returning to the undersigned.

3 RR 74-75 (PX 8) (**Tab D**).

### *Current counsel enters an appearance for MMC, objects to the expert reports, then withdraws his objection under instructions from JUA*

By December 2013, there was no ruling on the summary judgment motion. Mindful of the grave medical condition of their young client, Plaintiffs' counsel advised Gonzalez Castillo that it would be necessary for MMC to file an answer. 3 RR 80 (PX 10). Because Gonzalez Castillo could not appear on behalf of MMC, attorney Ron Hole was retained to represent MMC going forward. CR 208-10.

7

On January 2, 2014, Hole filed his answer on behalf of MMC. CR 208-10. Two weeks later, Plaintiffs' counsel sent him courtesy copies of the expert reports, along with a copy of the "executed letter agreement wherein Mr. Edward Castillo agreed to accept service of these reports on behalf of [MMC] since they had not yet made an appearance." 3 RR 108 (DX 4).

Surprisingly, Hole filed objections to the expert reports on February 5, 2014. His objections argued, *inter alia*, that the reports were not timely served because Hole did not receive them until January 2014. *See* CR 211-18.

Perplexed by Hole's belated objection in the face of the Rule 11 agreement, Plaintiffs' counsel wrote Hole on February 6, 2014 in an effort to clarify the issue. 3 RR 86-88 (PX 12). At the same time, JUA representatives "reviewed their file and sent Ron Hole the email confirming their authorization for [Gonzalez Castillo] to accept service of the Plaintiffs' Chapter 74 reports back in October, 2013" and "asked him to withdraw his argument that the hospital was not timely served with the Chapter 74 expert reports." 3 RR 45 (PX 2) (**Tab E**).

The lawyers spoke on February 7, 2014. Hole agreed that Gonzalez Castillo had been authorized to accept the expert reports on behalf of MMC and advised Plaintiffs' counsel that MMC "will not proceed" with objections to the timeliness of the reports. *See* 3 RR 6-7 (PX1) (**Tab F**); *see also* CR 330.

Memorializing this conversation, Hole sent Plaintiffs' counsel a letter stating that MMC would not proceed with its objections to the Chapter 74 expert reports:

8

> Dear Mr. Alexander:
>
> This letter will confirm our telephone conversation this afternoon, wherein I advised you that Defendants McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Medical Center, McAllen Hospitals, L.P. d/b/a South Texas Health Systems and South Texas Health System will not proceed with their Objections to Plaintiffs' Expert Reports, which were filed on February 5, 2014, in connection with the above-referenced matter. However, this agreement in no way prevents you from filing a Rule 13 Motion for Sanctions against me personally.
>
> If this letter meets with your understanding of our agreement, please sign it in the space below and return it to me so that I can file this agreement with the papers as a part of the record in this cause, pursuant to Rule 11 of the Texas Rules of Civil Procedure. Thank you for your courtesies in this matter. Should you have any questions, please do not hesitate to call me.
>
> Sincerely,
>
> HOLE & ALVAREZ, L.L.P.
>
> By: _____
> Ronald G. Hole

3 RR 6 (PX 1) (**Tab F**).[2]  Plaintiffs believed that was the end of the matter.

### *After 18 months of litigation and on the eve of trial, MMC reasserts its objections and provokes an extraordinary evidentiary hearing*

With the February 2014 confusion behind them, the parties litigated this case without incident for the next 18 months.  During this period, the parties conducted 18 depositions—two of them with the experts who authored the Chapter 74 reports.  CR 330 at ¶19.

But with trial set for August 17, 2015, MMC—through its counsel Hole— filed another motion to dismiss on July 20, 2015.  CR 249-54.  The motion argued that the Chapter 74 reports had not been served timely—the very argument Hole had represented MMC "will not proceed" to assert in February 2014.  *See id.*

---

[2] Plaintiffs' counsel responded by accepting Hole's representation and indicating that it was unnecessary to execute a Rule 11 agreement regarding this unilateral withdrawal—Hole's word was sufficient "as an officer of the Court." 3 RR 128-29 (DX 9).  Plaintiffs' counsel offered to file Hole's letter if necessary, *id.*, but received no reply.

Needless to say, this eleventh-hour development shocked Plaintiffs' counsel, who had relied on the Rule 11 agreement and Hole's withdrawal of his objections. At a hearing on the motion to dismiss on August 5, 2015, Plaintiffs set out to prove that both of those events had occurred and were binding on MMC.

MMC first called Christine Gaitan-Valdez, who testified that she is MMC's "primary interface or liaison with the hospital's insurance claims representatives and with outside counsel." 3 RR 120-22 (DX 6). Gaitan-Valdez explained that— to her knowledge—the only outside attorneys hired to represent MMC in this case were Ron Hole and one other attorney (Russell Schell). 2 RR 10-11, 14.

On the other hand, Gaitan-Valdez had never asked JUA whether any other attorney had been authorized to accept the Chapter 74 reports on behalf of MMC. 2 RR 20-21. And in response to questions from the court, Gaitan-Valdez clarified that her role as "primary interface or liaison" did not include selection of counsel:

> COURT: This interface that you put in this affidavit, interface liaison—what does that mean? You're the one that makes the decisions for the hospital ... Are you the one who makes the decision for the hospital as to who the attorneys will be who represent the hospital?
>
> . . .
>
> A: Not the final decision.

2 RR 30-31. Gaitan-Valdez repeatedly admitted that she does *not* make decisions about counsel for MMC. 2 RR 31. JUA makes those decisions. 2 RR 48-49 (testimony of Steve Gonzalez).

10

This discussion set the stage for a conversation—or perhaps confrontation—between MMC's current counsel (Hole) and its former counsel (Gonzalez). Gonzalez testified unequivocally that his firm had been instructed to accept service of the Chapter 74 reports on behalf of MMC by the insurer, JUA:

> Q:      (By Mr. Hole) On the date [the October 11, 2013 letter] was signed by Mr. Castillo, who was Gonzalez and Castillo representing in connection with this lawsuit?
>
> A:      We were representing [RGV] and [MMC] for the purposes of obtaining a Rule 11 agreement on behalf of [MMC] to extend the answer date that they would be required to file an answer in this case; *and for the purposes of receiving service of the plaintiffs Chapter 74 reports.* For those two purposes, we were representing the hospital entities. We were also representing [RGV], which I referenced earlier.
>
> Q:      You do understand that [RGV] is adverse to [MMC]?
>
> A:      I understand that after you became the attorney in this case and started all of your misrepresentation and representation that there—an adversity grew from that, but did not exist back at the time when all parties wanted me to represent the hospital, should the summary judgment be granted on behalf of the group.

2 RR 43-44 (**Tab G**).

With respect to the critical issue in this appeal—whether Gonzalez Castillo had been authorized by JUA to accept the Chapter 74 reports on behalf of MMC— Gonzalez consistently testified that "we were asked to represent the hospital for the purposes of obtaining a Rule 11 agreement and also for the purposes of receiving and accepting service of the plaintiff's Chapter 74 reports." 2 RR 52 (**Tab G**).

11

Q:          (By Mr. Hole) Okay. Are you familiar that a Rule 11 agreement must be between the party or the party's attorney and that you were not the party's attorney at the time, correct?

A:          . . . Our firm was asked and instructed to obtain a Rule 11 agreement from Plaintiff's counsel in this lawsuit to extend the deadline for filing an answer on behalf of the hospital entities. And we were asked, as attorneys for the hospital entities, to accept service of Chapter 74 reports on behalf of the hospital entities. So if you're telling me, *was I acting as an attorney on behalf of the hospitals and was I authorized to do so? My answer is yes.*

2 RR 57-58 (emphasis added) (**Tab G**).

MMC's counsel revisited this point so many times, with the same responses, that it became tiresome to the trial court: "Move on. He's answered the same way multiple times. For the purposes of getting the Rule 11 agreement and for the purposes of the Chapter 74 reports. He's said that multiple times already. And you've asked that question multiple times now." 2 RR 76-77 (**Tab G**).

Gonzalez further explained that Gaitan-Valdez, who was a "good friend," would not have been "in the loop on decisions like whether to extend an answer date or whether to authorize our law firm to accept Chapter 74 reports." 2 RR 47. To suggest otherwise, he said, "is to completely mischaracterize her role in the management of a lawsuit or the defense of a lawsuit for the hospitals." *Id.*

This extraordinary testimony was not vindictive, but a conscientious effort to live up to the ideals of our profession. Gonzalez explained his voluntary decision to appear and offer this testimony in terms that should make any lawyer proud:

12

Q:     (By Mr. Mithoff) Mr. Gonzalez, you were asked earlier at the beginning of your examination about a subpoena that I forwarded to you to appear here today. You accepted the subpoena. You didn't move to quash the subpoena. You were with your family in California. Why did you come? . . .

A:     I consider myself an officer of the Court. If Mr. Hole had asked me to come back, I would have come back without a subpoena. He never called me, never tried to make any contact with me at all at any time on any of these, even back when it was happening when he filed this motion.

       You called and said, Steve, all we want is to ask you is for the true rendition of the true facts of what happened. I have been authorized by the JUA so many times I can't tell you, to make agreements with attorneys whether I have filed an answer, made an appearance or not, to extend answer deadlines [and] on occasion to accept service of Chapter 74 reports for these very same hospitals, [MMC] included.

COURT:  Just refresh my memory. How long have you been doing [medical malpractice defense work]?

A:     Well, 30 years plus 32 years was when I first handled my first malpractice case in Houston and been practicing down here for about 20 years.

COURT:  And how long have you actually been working on cases for this particular company and its entities?

A:     I would say close to 20 years, tried many cases for them in this courthouse and obviously, I'm in a very difficult position here, Your Honor because they're a dear client of mine. And like I told you, Christy Valdez is a dear friend of mine. I mean, we—personally and we also work together. I have a lot of communication with her, but not about extensions of time for answers and not about acceptance of Chapter 74 reports. That's not what she and I do. That just happens to not be her job. She has other very important work . . .

13

What the hospital and its counsel are trying to say here is not fair. It doesn't represent the truth of how this works. In a case of this magnitude, as I said at the beginning, if Mr. Hole had wanted me to come back and tell the truth about how these agreements get made between attorneys, who gives the instructions, who gives the authority for me to act as an attorney or as an agent to accept service of Chapter 74 reports, I would be—I would have come back without a subpoena, just like I have for Plaintiffs' counsel.

So that's why I did not choose to avoid this, even though it was a major imposition on my family and my time with them.

2 RR 96-100.

### *The trial court denies the motion to dismiss*

The motion to dismiss was denied. CR 402. But the damage was done. MMC appealed and invoked its right to an automatic stay of the trial. CR 403-07; *see also* 2 RR 124-25.

## SUMMARY OF THE ARGUMENT

This Court should uphold the denial of MMC's motion to dismiss for three independent reasons.

*First*, MMC has not challenged all the grounds for the trial court's ruling. Plaintiffs raised a waiver argument in the trial court that MMC has not addressed, which provides a quick and easy way to affirm the decision below.

*Second*, that waiver argument was correct on the merits and the trial court properly exercised its discretion by sustaining it. Eighteen months before trial, MMC's current counsel raised an objection to the service of expert reports but then agreed to withdraw the objection—reviving it on the eve of trial to secure delay. The trial court correctly found that MMC waived any Chapter 74 complaint.

*Third*, the trial court correctly concluded that Plaintiffs timely served their expert reports on MMC by serving the attorneys who were authorized to receive them on behalf of MMC. It is no surprise that MMC's current counsel agreed to withdraw his objections to the Chapter 74 reports shortly after they were asserted; the objections were utterly without merit. MMC's insurer, which had the right to select counsel and control the defense, authorized former counsel to accept service of the expert reports on behalf of MMC. Failure to honor that Rule 11 agreement would make a mockery of Section 74.351 and the laudable goals of "tort reform."

The order should be affirmed as quickly as possible, so trial can proceed.

15

## STANDARD OF REVIEW:  ABUSE OF DISCRETION

A trial court's denial of a motion to dismiss a health-care liability claim under Section 74.351 of the Civil Practice and Remedies Code is reviewed for an abuse of discretion.  *Am. Transitional Care Ctrs. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).

A trial court abuses its discretion if acts arbitrarily or unreasonably or without any reference to guiding rules or principles.  *See*, *e.g.*, *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Fulp v. Miller*, 286 S.W.3d 501, 505 (Tex. App.—Corpus Christi 2009, no pet.).

When, as here, a trial court fails to issue specific findings of fact in support of its ruling on a motion to dismiss, the Court implies all necessary findings of fact that are supported by the evidence.  *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011).  This Court may uphold the trial court's ruling on a motion to dismiss on any theory supported by the record.  *Id*.

## ARGUMENT AND AUTHORITIES

The trial court's ruling can be affirmed on any of three independent grounds. Plaintiffs recommend that the Court affirm on waiver grounds simply because it can do so expeditiously, allowing the case to proceed to trial as soon as possible.

## I. MMC waived its appeal by failing to challenge all grounds that support the trial court's ruling.

The trial court did not specify its grounds for denying the motion to dismiss. CR 402. Because MMC has not challenged an independent basis for the ruling— waiver—the Court can affirm the ruling below without even reaching the merits. Plaintiffs therefore address this ground first.

When a trial court issues a ruling without specifying its grounds for decision, "[a]n appellant must challenge each independent ground that may support an adverse ruling." *U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 846 (Tex. App.— Corpus Christi 2011, pet. denied); *Inscore v. Karnes County Sav. & Loan Ass'n,* 787 S.W.2d 183, 184 (Tex. App.—Corpus Christi 1990, no writ) (same). Otherwise, this Court "must affirm the judgment on the unchallenged ground." *U.S. Lawns*, 347 S.W.3d at 847. This rule is well-settled and uniformly applied. *See*, *e.g.*, *In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 888 (Tex. App.—El Paso 2012, no pet.); *Britton v. Texas Dep't of Criminal Justice*, 95 S.W.3d 676, 681-82 (Tex. App.—Houston [1st Dist.] 2002, no pet.). It controls this case.

17

**A.      On appeal, MMC argues only that it was not timely served with expert reports.**

MMC challenges the trial court's ruling only on the basis that Plaintiffs did not comply with the service requirements for expert reports under Section 74.351. *See* MMC Br. at 6. It sets forth the service requirements for expert reports under Section 74.351, *see id.* at 8-9, then argues that various acts by Plaintiffs did not satisfy those requirements. *Id*. at 10-25. MMC is mistaken on the merits, but it is unnecessary even to reach the merits of its arguments.

**B.      Plaintiffs asserted another ground to deny the motion to dismiss, which MMC fails to challenge on appeal.**

In addition to addressing the merits of MMC's motion to dismiss below, Plaintiffs also asserted—in Part I of their supplemental response—that MMC had waived its right to challenge the timeliness of their service of the expert reports. Plaintiffs explained that MMC intentionally relinquished its right to object to the timeliness of the reports when, among other things, its current counsel withdrew his objections in February 2014. *See* CR 312-14. In addition, Plaintiffs argued that MMC's waiver was evidenced by its intentional decision to remain silent on the Chapter 74 issue for over 18 months as discovery proceeded. CR 313.

MMC's appellate brief does not challenge this alternative basis for decision. Having failed to do so in its opening brief, MMC cannot raise the issue in a reply. *See* Tex. R. App. P. 38.3. This Court has specifically addressed this issue:

18

> It is well-settled that Rule 38.3 of the Texas Rules of Appellate Procedure does not allow an appellant to include in a reply brief a new issue in response to a matter pointed out in appellee's brief but not raised by the appellant's original brief.

*U.S. Lawns*, 347 S.W.3d at 849 (quoting *In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 171 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding)). Thus, MMC has failed to challenge an alternative basis for the trial court's ruling and that omission is now incurable.

### C. The Court should affirm the trial court's ruling based on the unchallenged ground.

Because MMC did not challenge Plaintiffs' independent waiver argument, "any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the adverse ruling." *In re Elamex*, 367 S.W.3d at 888. This Court is unflinching: "If the appellant fails to challenge all possible grounds, we must affirm the judgment on the unchallenged ground." *U.S. Lawns*, 347 S.W.3d at 847. That rule makes quick work of this appeal.

## II. The trial court correctly found that MMC waived any objection to the timeliness of service.

If the Court reaches the merits, it should hold that the trial court correctly concluded MMC waived its right to object to the timeliness of the expert reports when its current counsel (1) knowingly abandoned that objection in February 2014 and (2) proceeded with discovery for 18 months—until the eve of trial.

### A. Chapter 74 rights can be waived.

The traditional rules of waiver apply to expert report challenges under Section 74.351. *See Jernigan v. Langley*, 111 S.W.3d 153, 156-58 (Tex. 2003). The issue in *Jernigan* was whether failure to file a prompt objection is a waiver. That issue has been mooted by the addition of a 21-day deadline for objections in the current version of the statute, but *Jernigan* confirmed the general principle that a party *can* waive its Chapter 74 rights. *Id.* at 156.

Waiver is intentional relinquishment of a known right or intentional conduct inconsistent with claiming such a right. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Its elements are "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*

To the extent waiver is a question of intent, a court must consider the words, acts, and conduct of the parties. *See Motor Vehicle Bd. v. El Paso Indep. Auto Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999). Under these circumstances, the question of waiver is a question of fact. *See id.*

### B. MMC's affirmative representations and subsequent silence each support a finding of waiver.

The trial court properly determined that MMC waived any objection to the timeliness of the expert reports. Its factual finding of waiver is amply supported.

20

The first two elements of waiver—an existing right and actual knowledge—are unquestionably satisfied. All parties agree that MMC had a right to timely expert reports under Section 74.351. And MMC's initial assertion of that right, prior to withdrawing its objections, proves its actual knowledge. *See* CR 211-18. The only factual dispute concerned the third element, which Plaintiffs established.

First, MMC made an intentional decision to relinquish its Chapter 74 rights through the affirmative representations of its current counsel. In February 2014, MMC's counsel withdrew his Section 74.351 objections, 3 RR 6-7 (PX1) (**Tab F**), and he did so at the instruction of MMC's insurer, JUA. 3 RR 45 (PX 2) (**Tab E**). After more than a year of litigation, MMC tried to ambush Plaintiffs by reasserting an objection to the timeliness of the expert reports on the eve of trial. CR 249-54; *see also* pp. 8-9, *supra*. This scenario represents a classic case of waiver.

Texas courts have found waiver of Chapter 74 under nearly identical facts. In *Uduma v. Wagner*, No. 01-12-00796-CV, 2014 WL 4259886 (Tex. App.—Houston [1st Dist.] Aug. 27, 2014, pet. denied) (mem. op.), defense counsel promised the trial court and the plaintiff that a particular defendant would not seek to assert Chapter 74. On the eve of trial, the defendant reneged and tried to assert the statutory right. *Id*. at *2-3. The trial court refused to allow the defendant to change position and assert Chapter 74 and the court of appeals affirmed. *Id*. at *4. In this case, MMC tried the very same strategy disapproved by *Uduma*. This Court can affirm on the basis of *Uduma* without further consideration of the merits.

21

Second, following the representations of its counsel, MMC remained silent for more than 18 months—during which time Plaintiffs relied on its representations and proceeded with the litigation. This conduct was wholly inconsistent with any claim that MMC intended to assert objections regarding the timeliness of the expert reports. *See Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (silence or inaction may establish waiver if it is for so long a period that it shows an intention to yield a known right). The trial court was entitled to make such a finding in this case.

In sum, the representations and extended silence of MMC support a finding that MMC waived its Chapter 74 rights. *See, e.g.*, *Memorial Hermann Hosp. Sys. v. Hayden*, No. 01-13-00154-CV, 2014 WL 2767128, at *9-10 (Tex. App.—Houston [1st Dist.] Jun. 17, 2014, pet. denied) (mem. op.) (holding that defendant who completed discovery and sought dismissal "four days prior to the trial court actually calling the case to trial" had waived its right to seek dismissal pursuant to Chapter 74); *In re Sheppard*, 197 S.W.3d 798, 801-02 (Tex. App.—El Paso 2006, orig. proceeding) (holding participation in discovery plus delay waived any right to seek dismissal based on expert report requirements).

The trial court did not abuse its discretion by finding that MMC had waived its Section 74.351 rights. The ruling can be affirmed on this independent basis—and doing so in a published opinion would send a strong message to the Texas bar that gamesmanship like the conduct in this case will not be tolerated.

22

**III. Plaintiffs satisfied Section 74.351 by serving the expert reports on counsel authorized to accept them on behalf of MMC.**

Finally, the trial court correctly found that Plaintiffs satisfied Section 74.351 by serving expert reports on counsel authorized to accept them on behalf of MMC. Thanks to the integrity of MMC's former counsel, who appeared voluntarily at the hearing and told the whole truth, there is no room to question this finding.

Plaintiffs served the expert reports on Steve Gonzalez and Edward Castillo, who were acting as attorneys for MMC pursuant to an explicit grant of authority. Gonzalez and Castillo were served on October 11, 2013—well within the deadline of December 5, 2013. Thus, the trial court properly denied the motion to dismiss.

**A. Gonzalez and Castillo were granted express authority to act as counsel for MMC for purposes of accepting the expert reports.**

**1. The insurer, JUA, had the right to choose counsel and control the defense on behalf of MMC.**

MMC's insurance policy gave its insurer, JUA, "the right and duty to defend any suit against the insured." 3 RR 53 (PX 4). This authorization is dispositive, because "[t]he right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured . . . ." *Northern County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004); *accord State Farm Mut. Auto Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998) (same). Such policy language grants the insurer "'complete and exclusive control'" of the defense, *State Farm*, 980 S.W.2d at 627 (citation omitted), so JUA's decisions in defending the suit are binding on MMC.

23

### 2. JUA engaged Castillo and Gonzalez on behalf of MMC and authorized them to accept service of Chapter 74 reports.

The trial court had good reason to find that JUA expressly authorized Gonzalez and Castillo to accept Plaintiffs' Chapter 74 reports on behalf of MMC. The trial court heard live testimony and received documentary evidence to support its factual finding that Gonzalez and Castillo were acting as attorneys for MMC with respect to the Chapter 74 reports, and that they had been expressly authorized by JUA to accept service of those reports on behalf of MMC.

Gonzalez unequivocally testified that he was "acting as an attorney on behalf of the hospitals and was . . . authorized to do so." 2 RR 58. He "definitely had an attorney/client relationship with McAllen Medical Center . . . for purposes of accepting the Chapter 74 expert reports." *Id.* at 77; *see also id.* at 44, 52 (same); pp. 11-14, *supra*.

This testimony was corroborated by the e-mails between Castillo and JUA, which verified that JUA had authorized Gonzalez Castillo to accept expert reports on behalf of MMC. *See* 3 RR 40 (PX 2) (**Tab C**); *id.* at 135-36 (DX 11) (**Tab B**); *see also* pp. 6-7, *supra*. Indeed, when the Chapter 74 objections originally arose, the JUA decisionmakers "sent Ron Hole the email confirming their authorization for [Gonzalez Castillo] to accept service of the Plaintiffs' Chapter 74 expert reports back in October, 2013." 3 RR 45 (PX 2) (**Tab E**). The evidence is overwhelming.

Defying this evidence, MMC persists in claiming there is no evidence that "either Mr. Gonzalez or Mr. Castillo was ever retained by the insurance company to represent the MMC Defendants in connection with the underlying medical negligence case." MMC Br. at 16. The standard of review forecloses that claim. The trial court did not abuse its discretion by determining that JUA had authorized Gonzalez and Castillo to act as counsel for MMC for purposes of accepting service of the Chapter 74 reports.

### 3. An enforceable Rule 11 agreement allowed Plaintiffs to serve the reports on Gonzalez and Castillo.

As authorized by JUA, Gonzalez and Castillo executed a Rule 11 agreement regarding the Chapter 74 expert reports. 3 RR 74-75 (PX 8) (**Tab D**). It stated that Gonzalez and Castillo had been "authorized by [MMC] to accept service" of the Chapter 74 expert reports, and it acknowledged that the reports had been received by the attorneys "on behalf of [MMC] and that such receipt . . . constitutes proper service on such entities as required by [Chapter 74]." *Id.*

That written agreement between counsel was filed with the trial court as part of the proceedings on the motion to dismiss. CR 335-36; *see also* 2 RR 95. Thus, it is binding on the parties to this litigation. *See* Tex. R. Civ. P. 11.

### B. MMC's last-ditch arguments are unavailing.

MMC makes a variety of final arguments concerning the validity of service of the expert reports on Gonzalez and Castillo. None is meritorious.

25

### 1.   The manner of service is immaterial in this case.

Based on *Fulp v. Miller*, 286 S.W.3d 501 (Tex. App.—Corpus Christi 2009, no pet.), MMC contends that service on Gonzalez and Castillo was insufficient because the expert reports were served by regular mail, rather than certified mail.[3] But because MMC did not raise this argument in its motion to dismiss, CR 249-54, or secure a ruling at trial, it has been waived. *See* Tex. R. App. P. 33.1(a).

In any event, Gonzalez and Castillo actually received the reports within the 120-day deadline—and acknowledged it. *See* 3 RR 74-75 (PX 8). In this situation, the purpose of Rule 21a has been satisfied and no further compliance is required. *Spiegel v. Strother*, 262 S.W.3d 481, 483-85 (Tex. App.—Beaumont 2008, no pet.) (distinguishing numerous cases cited by MMC); *Northeast Texas Staffing v. Ray*, 330 S.W.3d 1, 4-5 (Tex. App.—Texarkana 2010, no pet.); *Goforth v. Bradshaw*, 296 S.W.3d 849, 854 (Tex. App.—Texarkana 2009, no pet.). This complaint is both unpreserved and insubstantial, and it contradicts the Rule 11 agreement.

### 2.   There was no "attorney in charge" to be served and the parties agreed to an alternative form of service.

Based again on *Fulp*, MMC also argues that service on a "party's attorney" under Section 74.351 requires service on an "attorney in charge" under Rule 8. MMC Br. at 22-23. Again, MMC did not raise this issue in its motion to dismiss, CR 249-54, or secure a ruling at trial, so it is waived. *See* Tex. R. App. P. 33.1(a).

---

[3] Rule 21a was amended, effective less than three months after Plaintiffs served their reports on Gonzalez Castillo, to allow for service by regular mail. *See* Misc. Docket No. 13-9165 (Tex. Dec. 15, 2013).

Furthermore, MMC's reading of *Fulp* is flawed. As a threshold matter, nothing in Rule 8 forbids altering the rules of service through a Rule 11 agreement. Here, the parties had a valid Rule 11 agreement that authorized Plaintiffs to serve their expert reports on Gonzalez and Castillo. Thus, irrespective of Rule 8 or *Fulp*, Plaintiffs satisfied Chapter 74. *Fulp* did not eviscerate Rule 11 agreements.

In any event, this Court should not be mislead about its decision in *Fulp*. There, the Court held that when an answer has been filed on behalf of a defendant, *id*. at 504-05, a health-care liability claimant cannot satisfy Chapter 74 by serving reports on an attorney other than the attorney who filed the answer. *Id*. at 512.

That holding is unexceptional, but it has no application to the present case. In this case, MMC had not filed an answer—ironically, because Gonzalez Castillo had negotiated an extension of the answer deadline for MMC. *See* pp. 3-4, *supra*. Thus, not only was there no "attorney of record" for MMC at the time the reports were served, but the same attorneys who secured a Rule 11 agreement extending the answer deadline likewise executed an agreement to accept the expert reports. Under these facts, *Fulp* does not apply. This Court was careful to emphasize that, in *Fulp*, "[t]he record does not reflect that [the attorney in the separate case] or any other attorney represented the Hospital in this case." *Id*. at 511 n.6. By contrast, the record shows that Gonzalez and Castillo "represented the Hospital in this case," *id*., and the trial court was entitled to make that finding.

27

### 3. MMC's other arguments are irrelevant.

MMC's last two arguments are facially irrelevant. First, MMC observes that the mere act of filing expert reports does not constitute service on the defendant. MMC Br. at 10-11. Second, MMC asserts that serving an expert report on a defendant's insurer does not constitute service on the defendant. *Id.* at 23-24. Both propositions are correct, *see Offenbach v. Stockton*, 285 S.W.3d 517, 522-23 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011), but irrelevant. Plaintiffs do not argue that Chapter 74 was satisfied when their reports were filed with the trial court or served on MMC's insurer. The statute was satisfied when the reports were served on the attorneys authorized to accept them and identified in a valid and binding Rule 11 agreement. The trial court did not err.

### C. MMC's evidentiary objections are unpreserved and insubstantial.

As part of its argument challenging Gonzalez and Castillo's ability to accept the Chapter 74 reports, MMC briefly mentions an objection to Plaintiffs' Exhibit 2:

> Also, nothing in any of the documents admitted into evidence at the hearing, *including the documents from the insurance company (which were clearly hearsay, not properly authenticated and objected to on those bases—[citation]*), indicate that either Mr. Gonzalez or Mr. Castillo was ever retained by the insurance company to represent the MMC Defendants in connection with the underlying medical negligence case.

MMC Br. at 16 (emphasis added). This parenthetical reference is insufficient to present any ground for relief on appeal and erroneous in any event. To be safe, Plaintiffs address it here for the convenience of the Court.

28

## 1. Any evidentiary complaint has been waived by inadequate preservation and inadequate briefing.

To the extent that MMC seeks to challenge the admission of "the documents from the insurance company" on appeal, it did not preserve such an issue below. MMC objected below "only as to the hearsay within hearsay and authenticity as to some of the documents" in Plaintiffs' Exhibit 2, which contained numerous e-mails among JUA, Gonzalez and Castillo, and Plaintiffs' counsel. 2 RR 85. However, MMC did not identify any particular documents as the subject of its objection, which is insufficient to preserve any complaint. *See* Tex. R. App. P. 33.1(a); *Columbia Rio Grande Regional Hosp. v. Stover*, 17 S.W.3d 387, 396 (Tex. App.— Corpus Christi 2000, no pet.) (holding that blanket objections to entire exhibits on the basis of hearsay, without identifying specific statements, preserve nothing for appellate review). A litigant who "directs its objections to the exhibits as a whole and does not point out which parts are objectionable hearsay" waives error. *Id*.

Likewise, MMC's allusion to "the documents from the insurance company" in its appellate brief does not adequately present an issue for this Court to review. *See* Tex. R. App. P. 38.1. Without any specific reference to a particular document or any citation to legal authority, it is impossible to answer or analyze this issue. Such a "bald assertion of objections made to the trial court without any citations to the record or legal authority" is thus "inadequately briefed." *Gonzalez v. Villarreal*, 251 S.W.3d 763, 774 (Tex. App.—Corpus Christi 2008, pet. denied).

29

### 2. The authenticity objection was invalid.

To the extent that the Court entertains any argument about the authenticity of the documents within Plaintiffs' Exhibit 2, that objection was meritless and the trial court properly overruled it. After MMC asserted its authenticity objection, Gonzalez immediately confirmed that he had personal knowledge of the e-mails and that they had not been altered. 2 RR 85-86. This testimony supported a finding that the documents were authentic copies of e-mails from Gonzalez's file. *See* Tex. R. Evid. 901. The trial court did not abuse its discretion by overruling the authenticity objection.

### 3. The hearsay objection was invalid.

Likewise, to the extent that the Court entertains any argument about hearsay, that objection was meritless and the trial court properly overruled it.

Obviously, any "documents from the insurance company" are not hearsay. Documents offered against MMC and made by its agent (JUA) on a matter within the scope of JUA's duty to conduct the legal defense constitute party admissions. Thus, they are "not hearsay." Tex. R. Evid. 801(e)(2)(D); *Excel Corp. v. Porras*, 14 S.W.3d 307, 314 n.1 (Tex. App.—Corpus Christi 1999, pet. denied).

To the extent that MMC actually meant to challenge the e-mails by Castillo (which are not "documents from the insurance company"), its objection was futile. Those emails were admissible for at least two reasons.

30

First, MMC counsel Hole alleged that Gonzalez and Castillo had fabricated their testimony and acted with improper motives by claiming they were authorized to act on behalf of MMC while simultaneously representing RGV in the litigation. *See* 2 RR 43-44, 102-103. Castillo's e-mails were consistent with his testimony, DX 11 (**Tab B**), so they were "not hearsay." Tex. R. Evid. 801(e)(1)(B).

Second, even if the e-mails were hearsay, they were admissible under the exception for present-sense impressions. The emails were sent after Castillo spoke with JUA "just now," 3 RR 40 (PX 2) (**Tab C**), and "just received a call," 3 RR 45 (PX 2) (**Tab E**), and they memorialized his impressions about those discussions. Such impressions "are not excluded by the hearsay rule." Tex. R. Evid. 803(1); *Daniels v. Yancey*, 175 S.W.3d 889, 895-96 (Tex. App.—Texarkana 2005, no pet.).

For either reason, the trial court did not abuse its discretion by overruling the hearsay objections.

### 4. MMC has not demonstrated that any error was harmful.

Finally, MMC bears the burden to prove that it has been prejudiced by the trial court's evidentiary rulings. *See In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2013). Without identifying specific documents for challenge, MMC cannot hope to show that the decision "turns on" inadmissible evidence. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). Furthermore, any document subject to challenge was cumulative of other evidence (including testimony by Gonzalez and Castillo), so at most, any error would be harmless. *See* Tex. R. App. P. 44.1(a).

31

The vague nature of MMC's complaint underscores the absence of harm. MMC challenges only "documents from the insurance company," MMC Br. at 16, but Plaintiffs' brief does not rely on any "documents from the insurance company." E-mails *from* the lawyers *to* JUA confirming that Gonzalez Castillo was authorized to accept the Chapter 74 reports are not "documents from the insurance company." *See* pp. 6, 8, *supra.* Therefore, MMC has utterly failed to establish harmful error; to the extent that the decision below can be upheld without any reference to the "documents from the insurance company," any error was plainly harmless.

### CONCLUSION AND PRAYER FOR RELIEF

The trial court's order denying the motion to dismiss should be affirmed. Plaintiffs request all other relief to which they are entitled.

Respectfully submitted,

**BECK REDDEN LLP**

| | |
|---|---|
| **MITHOFF LAW** | By: */s/ Russell S. Post* |
| Richard Warren Mithoff | Russell S. Post |
| State Bar No. 14228500 | State Bar No. 00797258 |
| rmithoff@mithofflaw.com | rpost@beckredden.com |
| Joseph R. Alexander, Jr. | Patrice B. Childress |
| State Bar No. 00995150 | State Bar No. 24059569 |
| jalexander@mithofflaw.com | pchildress@beckredden.com |
| Warner Hocker | Kyle Lawrence |
| State Bar No. 24074422 | State Bar No. 24087895 |
| whocker@mithofflaw.com | klawrence@beckredden.com |
| 500 Dallas, Suite 3450 | 1221 McKinney Street, Suite 4500 |
| Houston, TX 77002 | Houston, TX 77010 |
| (713) 654-1122 | (713) 951-3700 |
| (713) 739-8085 (Fax) | (713) 951-3720 (Fax) |

**COWAN & GARZA**
Viola G. Garza
State Bar No. 00787518
506 East Dove Street
McAllen, TX 78504
(956) 994-9170
(956) 618-2324 (Fax)

**SMITH & HASSLER**
Brent Cordell
State Bar No. 24005953
1445 North Loop West, Suite 700
Houston, TX 77008
(713) 739-1250
(713) 864-7226 (Fax)

**ATTORNEYS FOR APPELLEES MARIO I. RODRIGUEZ AND LUDIVINA IRACHETA, INDIVIDUALLY AND AS NEXT FRIENDS OF XXXXX, A MINOR**

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2015, a true and correct copy of the above and foregoing Brief of Appellees was forwarded to all counsel of record, by the Electronic Filing Service Provider if registered, otherwise by email, as follows:

Ronald G. Hole
HOLE & ALVAREZ, L.L.P.
P. O. Box 720547
McAllen, TX 78504
mail@holealvarez.com

Russell W. Schell
SCHELL COOLEY LLP
15455 Dallas Parkway, Suite 550
Addison, TX 75001
rschell@schellcooley.com

*Counsel for Defendants McAllen Hospitals, L.P., McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Medical Center, McAllen Hospitals, L.P. d/b/a South Texas Health System and South Texas Health System*

Eloy Sepulveda
ATTORNEY AT LAW
716 South Texas Blvd.
Weslaco, TX 78596
sepulveda.law@gmail.com

*Guardian Ad Litem*

Douglas M. Kennedy
BRIN & BRIN, P.C.
623 I-H 10 West
San Antonio, TX 78201
dkennedy@brinandbrin.com

*Attorneys for Defendants Hugo F. Carvajal, M.D., Texas Inpatient Pediatrics, P.A., Texas Pedicare, P.A., South Texas Urgent Care, P.L.L.C. d/b/a North Central Urgent Care and Comprehensive Urgent Care, P.A.*

W. Richard Wagner
WAGNER CARIO, LLP
7705 Broadway
San Antonio, TX 78209
rwagner@wagnercario.com

*Attorneys for Defendants RGV Pediatric Critical Care, P.A.*

/s/ *Russell S. Post*
Russell S. Post

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 7,455 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2)(B).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: <u>December 22, 2015</u>.

*/s/ Russell S. Post*
Russell S. Post
*Counsel for Appellees*
*Mario Rodriguez and Ludivina Iracheta,*
*Individually and as Next Friends of*
*Xxxxx Xxxxxxxxx, A Minor,*

# NO. 13-15-00362-CV

## IN THE THIRTEENTH COURT OF APPEALS
### CORPUS CHRISTI-EDINBURG, TEXAS

**MCALLEN HOSPITALS, L.P., MCALLEN HOSPITALS, L.P. D/B/A MCALLEN MEDICAL CENTER, MCALLEN MEDICAL CENTER, MCALLEN HOSPITALS, L.P. D/B/A SOUTH TEXAS HEALTH SYSTEM AND SOUTH TEXAS HEALTH SYSTEM,**
*Appellants*,

**v.**

**MARIO RODRIGUEZ AND LUDIVINA IRACHETA, INDIVIDUALLY AND AS NEXT FRIENDS OF XXXXX XXXXXXXXX, A MINOR,**
*Appellees*.

On Appeal from the 389th District Court, Hidalgo County, Texas
Trial Court Cause No. C-2334-12-H

## APPENDIX TO
## BRIEF OF APPELLEES

**Tab**

A   Order denying MMC's Motion to Dismiss (CR 402)

B   DX 11 (3 RR 136)

C   Email from PX2 (3 RR 40)

D   PX8 (3 RR 74-75)

E   Email from PX2 (3 RR 45)

F   PX1 (3 RR 6-7)

G   Excerpts of Steve Gonzalez Testimony (2 RR 43-44, 52, 57-58, 76-77)

36

# TAB A


Order denying MMC's Motion to Dismiss
(CR 402)

**CAUSE NO. C-2334-12-H**

| | | |
|---|---|---|
| MARIO I. RODRIGUEZ AND LIDUVINA | § | IN THE DISTRICT COURT |
| IRACHETA, Individually and as Next Friends | § | |
| Of XXXXX XXXXXX XXXXXXXXX, XX, | § | |
| A MINOR | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | 389th JUDICIAL DISTRICT |
| | § | |
| HUGO F. CARVAJAL, M.D.; TEXAS | § | |
| INPATIENT PEDIATRICS, P.A.; TEXAS | § | |
| PEDICARE, P.A.; RGV PEDIATRIC | § | |
| CRITICAL CARE, P.A.; SOUTH TEXAS | § | |
| URGENT CARE, PLLC d/b/a NORTH | § | |
| CENTRAL URGENT CARE; and | § | |
| COMPREHENSIVE URGENCT CARE, P.A. | § | |
| Defendants | § | HIDALGO COUNTY, TEXAS |

## ORDER DENYING McALLEN HOSPITAL DEFENDANTS' MOTION TO DISMISS

CAME ON FOR HEARING this day McAllen Hospital Defendants' Motion to Dismiss and after considering the motion, the responses, the argument of counsel and the applicable law, this court is of the opinion that McAllen Hospital Defendants' Motion to Dismiss should be DENIED; it is therefore

ORDERED that McAllen Hospital Defendants' Motion to Dismiss be and is hereby DENIED; It is further

ORDERED that the trial of this case will remain as currently set to begin on _____, 20__.

Signed this _5_ day of _August_, 2015

_____
JUDGE PRESIDING

1

# TAB B


DX 11
(3 RR 136)

CAUSE NO. C-2334-12-H

MARIO I. RODRIGUEZ and LUDIVINA § IN THE DISTRICT COURT OF
IRACHETA, Individually and as Next Friends §
of XXXXX XXXXXX XXXXXXXXX, XXX, A Minor §
§
VS. §
§
HUGO F. CARVAJAL, M.D.; TEXAS § HIDALGO COUNTY, TEXAS
INPATIENT PEDIATRICS, P.A.; TEXAS §
PEDICARE, P.A.; RGV PEDIATRIC §
CRITICAL CARE, P.A.; SOUTH TEXAS §
URGENT CARE, P.L.L.C. d/b/a NORTH §
CENTRAL URGENT CARE; and §
COMPREHENSIVE URGENT CARE, P.A. § 389TH JUDICIAL DISTRICT

AFFIDAVIT

STATE OF TEXAS §
§
COUNTY OF HIDALGO §

BEFORE ME, the undersigned authority, on this day appeared Edward J. Castillo, who is

personally known to me and first being duly sworn according to law upon his oath and said:

"My name is Edward J. Castillo

I am over the age of 18 years old and I have personal knowledge of the facts
stated below. The statements contained in this affidavit are true and correct.

I became licensed to practice law in the State of Texas in 2003. Since that time
I have been engaged in the full-time practice of law, mostly defending doctors
and hospitals in medical malpractice lawsuits. I am board-certified in personal
injury trial law.

In relation to the above-styled lawsuit, my law firm GONZALEZ CASTILLO, LLP,
filed an Answer on behalf of RGV Pediatric Critical Care, P.A. (RGV) on
September 26, 2012. On behalf of RGV, Gonzalez Castillo, LLP filed a Motion for
Summary Judgment on August 6, 2013.

During the pendency and before a ruling was made on RGV's Motion for
Summary Judgment, McAllen Hospitals, L.P. d/b/a McAllen Medical Center
.(MMC) was added as a named Defendant.

RECEIVED

AUG - 3 2015

Hole & Alvarez, L.L.P.

C233412H GS
HEARING EXHIBIT
8.5.15
NO. 11
HOLE & ALVAREZ, L.L.P.

On January 29, 2013, the insurance carrier for MMC, Joint Underwriters Association (JUA) acknowledged that JUA coverage would be applicable and expressed its desire that Gonzalez Castillo, LLP represent MMC in the event that RGV's Motion for Summary Judgment was granted.

On August 20, 2013, MMC's insurance carrier, JUA instructed Gonzalez Castillo, LLP, to obtain a written agreement from Plaintiffs' counsel extending MMC's Answer date until after a ruling on RGV's Motion for Summary Judgment. In line with JUA's instructions on September 3, 2013, I executed a written Rule 11 Agreement extending MMC's Answer date until two (2) weeks after the Court provided a written ruling on Defendant RGV's Motion for Summary Judgment.

On October 9, 2013, I received an inquiry from Plaintiffs' counsel asking whether Gonzalez Castillo, LLP could accept service of Plaintiffs' Chapter 74 expert reports pertaining to MMC.

On October 10, 2013, MMC's insurance carrier, JUA, instructed me to advise Plaintiffs' counsel that Gonzalez Castillo, LLP was authorized to accept service of Plaintiffs' Chapter 74 expert reports as to MMC.

Plaintiffs' counsel submitted a letter dated October 11, 2013, confirming that Gonzalez Castillo, LLP, was authorized to accept service of Plaintiffs' Chapter 74 expert reports as to MMC. The reports were received by Gonzalez Castillo, LLP and forwarded to MMC's insurance carrier, JUA.

Ultimately, alternate counsel was retained to represent MMC, and RGV's Motion for Summary Judgment was denied.

The office file of Gonzalez Castillo, LLP contains documents memorializing the above-events. These documents can be produced for the Court's review, if so ordered.

Further, affiant sayeth naught."

_____
Edward J. Castillo

SUBSCRIBED AND SWORN TO on this the 31st day of July, 2015.

_____
NOTARY PUBLIC
In and for the State of Texas
Expiration date of commission

KRISTA MIRELES
MY COMMISSION EXPIRES
September 19, 2018

- 2 -

# TAB C

Email from PX2
(3 RR 40)

From: Annette Word
Sent: Thursday, October 10, 2013 2:44 PM
To: Sally Stewart (sstewart@tmliua.com)
Cc: Leslie Krafve (lkrafve@tmliua.com); steveg
Subject: FW: Mario Rodriguez, Jr.

Dear Sally:

It was good talking with you just now. In line with our conversation, this will confirm that we will advise Plaintiffs' counsel that we will accept service of Plaintiffs' Chapter 74 expert reports as to the hospital entities.

Upon receipt of the reports, we will forward those to you, and we can discuss the sufficiency/adequacy of the reports.

Thank you.

Edward J. Castillo
GONZALEZ CASTILLO, LLP
1317 E. Quebec Ave.
McAllen, Texas 78503
(956) 618-0115
FAX: (956) 618-0445
ecastillo@valleyfirm.com

CONFIDENTIALITY NOTICE:
This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged. This e-mail and any documents attached, may contain confidential information belonging to the sender which is protected by the attorney-client, work product and/or other privileges. The information is intended only for the use of the individuals or entities named above. If you have received this e-mail in error, we would appreciate your immediate notification to us by collect telephone call or by e-mail at law@valleyfirm.com to arrange for the return of all copies of the e-mail. You should also delete this transmission from your computer and/or server.

# TAB D

PX8
(3 RR 74-75)

# MITHOFF LAW

RICHARD WARREN MITHOFF, P.C.
JANIE L. JORDAN
SHERIE POTTS BECKMAN
JOSEPH R. ALEXANDER, JR.
WARNER V. HOCKER

OF COUNSEL

WILLIAM J. STRADLEY
DAVID H. BURROW

ONE ALLEN CENTER
PENTHOUSE SUITE 3450
500 DALLAS STREET
HOUSTON, TEXAS 77002

TELEPHONE 713-654-1122
FACSIMILE 713-739-8085
www.mithofflaw.com

October 11, 2013

Mr. Steve Gonzales
Mr. Edward Castillo
GONZALEZ & CASTILLO, LLP
1317 E. Quebec Avenue
Mcallen, Texas 78503

Re: Cause No. C-2334-12-H; *Mario I. Rodriguez and Ludivina Iracheta, Individually and as Next Friends of Mario Isaias Rodriguez, Jr., A Minor v. Hugo F. Carvajal, M.D., et al.*; in the 389th District Court of Hidalgo County, Texas

Steve and Edward:

Attached please find the following regarding the above referenced matter:

1. Report of Eliezer Nussbaum, M.D., dated October 9, 2013, and curriculum vitae filed pursuant to Tex. Civ. Prac. & Rem. Code § 74.351; and

2. Report of Susan Englemen, R.N., dated October 2, 2013, and curriculum vitae filed pursuant to Tex. Civ. Prac. & Rem. Code § 74.351.

This will confirm that you have been authorized by McALLEN HOSPITALS, L.P., McALLEN HOSPITALS, L.P. d/b/a McALLEN MEDICAL CENTER, McALLEN MEDICAL CENTER, McALLEN HOSPITALS, L.P. d/b/a SOUTH TEXAS HEALTH SYSTEM and SOUTH TEXAS HEALTH SYSTEM to accept service of the above expert reports and curricula vitae from Plaintiffs MARIO I. RODRIGUEZ and LUDIVINA IRACHETA, Individually and as Next Friends of MARIO ISAIAS RODRIGUEZ, JR., A Minor, as required by Civil Practice and Remedies Code Section 74.351.



PLAINTIFF'S
EXHIBIT
8    85.15
C233412H    GS

Mr. Steve Gonzales
Mr. Edward Castillo
October 11, 2013
page -2-

This will also acknowledge and confirm that these reports and curricula vitae have been received by you on behalf of McALLEN HOSPITALS, L.P., McALLEN HOSPITALS, L.P. d/b/a McALLEN MEDICAL CENTER, McALLEN MEDICAL CENTER, McALLEN HOSPITALS, L.P. d/b/a SOUTH TEXAS HEALTH SYSTEM and SOUTH TEXAS HEALTH SYSTEM, and that such receipt by you constitutes proper service on such entities as required by Civil Practice and Remedies Code Section 74.351.

Please acknowledge that you have been authorized to accept service of these reports and curricula vitae on behalf of McALLEN HOSPITALS, L.P., McALLEN HOSPITALS, L.P. d/b/a McALLEN MEDICAL CENTER, McALLEN MEDICAL CENTER, McALLEN HOSPITALS, L.P. d/b/a SOUTH TEXAS HEALTH SYSTEM and SOUTH TEXAS HEALTH SYSTEM by signing below and returning to the undersigned.

Thank you very much.

Sincerely,

MITHOFF LAW FIRM

Joseph R. Alexander, Jr.

AUTHORIZED TO ACCEPT SERVICE AS DESCRIBED ABOVE:

_____
Mr. Steve Gonzales
Mr. Edward Castillo

JRA/tmd
Enclosures

# TAB E

Email from PX2
(3 RR 45)

# Annette Word

| From: | Annette Word |
| Sent: | Friday, February 07, 2014 9:31 AM |
| To: | steveg |
| Subject: | Rodriguez v. Camacho |

| Tracking: | Recipient | Delivery | Read |
| --- | --- | --- | --- |
| | steveg | Delivered: 2/7/2014 9:31 AM | Read: 2/7/2014 9:45 AM |

Steve, I just received a call from Les Krafve. She just had some general questions on Silva. Then she advised that on the Rodriguez matter, she and Sally reviewed their file and sent Ron Hole the email confirming their authorization for us to accept service of the Plaintiffs' Chapter 74 expert reports back in October, 2013. They shipped the email to Ron and have asked him to withdraw his argument that the hospital was not timely served with the Chapter 74 expert reports, which would be his basis for dismissal. Les was not sure whether Ron would still pursue objections to the adequacy of the expert reports.

Begs the question that Ron somehow believed that we were acting without authority, not sure.

Edward J. Castillo
GONZALEZ CASTILLO, LLP
1317 E. Quebec Ave.
McAllen, Texas 78503
(956) 618-0115
FAX: (956) 618-0445
ecastillo@valleyfirm.com

CONFIDENTIALITY NOTICE:
This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged. This e-mail and any documents attached, may contain confidential information belonging to the sender which is protected by the attorney-client, work product and/or other privileges. The information is intended only for the use of the individuals or entities named above. If you have received this e-mail in error, we would appreciate your immediate notification to us by collect telephone call or by e-mail at law@valleyfirm.com to arrange for the return of all copies of the e-mail. You should also delete this transmission from your computer and/or server.

# TAB F

PX1
(3 RR 6-7)

# HOLE & ALVAREZ, L.L.P.

### A T T O R N E Y S   A T   L A W

WATER TOWER CENTRE
612 W. NOLANA LOOP ♦ SUITE 370
P.O. BOX 720547
McALLEN, TEXAS 78504

**February 7, 2014**

RONALD G. HOLE
*Board Certified*
*Personal Injury Law • Civil Trial Law*
*Texas Board of Legal Specialization*

TEL: (956) 631-2891
FAX: (956) 631-2415
E-MAIL: mail@HoleAlvarez.com

CHERYL D. HOLE
ADRIANA BENAVIDES MADDOX
*Of Counsel*



## TELECOPY NO.: (713) 739-8085

Mr. Joseph L. Alexander, Jr.
Mithoff Law Firm
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002

Re:   Cause No. C-2334-12-H
*Mario Rodriguez and Ludivina Iracheta, Individually and as Next Friends of Mario Isaias Rodriguez, Jr., a Minor vs. Hugo F. Carvajal, M.D., Texas Inpatient Pediatrics, P.A., Texas Pedicare, P.A., RGV Pediatric Critical Care, P.A., South Texas Urgent Care, P.L.L.C. d/b/a North Central Urgent Care and Comprehensive Urgent Care, P.A.*

Dear Mr. Alexander:

This letter will confirm our telephone conversation this afternoon, wherein I advised you that Defendants McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Hospitals, L.P. d/b/a McAllen Medical Center, McAllen Medical Center, McAllen Hospitals, L.P. d/b/a South Texas Health Systems and South Texas Health System will not proceed with their Objections to Plaintiffs' Expert Reports, which were filed on February 5, 2014, in connection with the above-referenced matter. However, this agreement in no way prevents you from filing a Rule 13 Motion for Sanctions against me personally.

If this letter meets with your understanding of our agreement, please sign it in the space below and return it to me so that I can file this agreement with the papers as a part of the record in this cause, pursuant to Rule 11 of the Texas Rules of Civil Procedure. Thank you for your courtesies in this matter. Should you have any questions, please do not hesitate to call me.

Sincerely,

HOLE & ALVAREZ, L.L.P.

By: _____
Ronald G. Hole

RGH:opv



Mr. Joseph L. Alexander, Jr.
February 7, 2014
Page 2


**AGREED TO:**

Mithoff Law Firm
Penthouse, One Allen Center
500 Dallas, Suite 3450
Houston, Texas 77002
Telephone No.: (713) 654-1122
Telecopier No.: (713) 739-8085


By: _____
       Joseph L. Alexander, Jr.
       State Bar No. 00995150
       **ATTORNEYS FOR PLAINTIFFS**

# TAB G

Excerpts of Steve Gonzalez Testimony
(2 RR 43-44, 52, 57-58, 76-77)

exhibits?

THE COURT: They're right here.

MR. HOLE: May I approach?

THE COURT: Sure.

MR. HOLE: Thank you.

Q. (By Mr. Hole) If you need to look at any of the exhibits, here they are, but with respect to the letter in -- I think it's dated October 11, 2013, do you have a copy of the letter that Edward signed?

Let me just go ahead and mark it as Exhibit 10. I don't think it's in yet.

MR. HOLE: Your Honor, at this time we'd offer Exhibit 10.

MR. MITHOFF: We have no objections.

THE COURT: It's admitted.

MR. HOLE: Okay.

Q. (By Mr. Hole) And I'm referring to this letter dated October 11th, 2013 -- sorry about the year -- which is been entered into evidence as Exhibit 10. Is that a letter that Edward -- you recognize his signature on there?

A. I do see his signature, yes.

Q. On the date that that was signed by Mr. Castillo, who was Gonzalez and Castillo representing in connection with this lawsuit?

A. We were representing RGV Pediatric Critical Care, P.A., and McAllen Medical Center for the purposes of obtaining a Rule 11 agreement on behalf of McAllen Medical Center to extend the answer date that they would be required to file an answer in this case; and for the purpose of receiving service of the plaintiffs Chapter 74 reports. For those two purposes, we were representing the hospital entities. We were also representing the RGV Group, which I referenced earlier.

Q. You do understand that the RGV Group, the RGV Pediatric Group, is adverse to McAllen Medical Center?

A. I understand that after you became the attorney in this case and started all of your misrepresentation and representation that there -- an adversity grew from that, but did not exist back at the time when all parties wanted me to represent the hospital, should the summary judgment be granted on behalf of the group.

Q. You indicated --

THE COURT: Excuse me just one second. You triggered a memory.

THE WITNESS: I'm sorry, Your Honor.

THE COURT: No, you triggered a memory. Weren't you in this courtroom and made that specific announcement actually multiple times?

THE WITNESS: Your Honor, I was.

A. That's not a true statement. I already answered that question. I told you that we were asked to represent the hospital for the purposes of obtaining a Rule 11 agreement and also for the purposes of receiving and accepting service of the plaintiff's Chapter 74 reports.

Q. Now --

A. If -- let me finish. If the motion for summary judgment of RGV, RGV, the group, was granted, we were then going to answer for the hospital entities and make a formal appearance and at that time, open a file and do what we have done hundreds of times for the hospital over the last 15 years.

Q. You had not opened a file on this case with respect to McAllen Medical Center to date, correct?

A. We had a file open. We did. It was a file that is separate from the file of RGV Group, but we had not prepared an original answer and filed it on behalf of the hospital because we were waiting for a ruling from the Court on the summary judgment for the group. And everyone agreed and it was everyone's desire --

MR. HOLE: Objection as to the hearsay, Your Honor. I didn't ask for hearsay. This is nonresponsive anyway, but telling everybody agreed is hearsay.

THE WITNESS: I have written documents,

reason the Supreme Court says we need Rule 11 is because if you're going to have an agreement, when we don't have the he said/she said, we file the rule. That's why we follow the Rule 11 to make it enforceable?

THE COURT: What was your question?

Q. (By Mr. Hole) Are you familiar --

MR. HOLE: May I rephrase it then, Your Honor?

THE COURT: Yeah, I didn't understand your question.

Q. (By Mr. Hole) Are you aware that because of the, I take somebody at his word is the very reason why Rule 11 is enacted -- was enacted by the Supreme Court so you don't have this question of whether or not he said/she said? You know exactly what it is, the document speaks for itself?

A. I've never met --

THE COURT: What was your question?

THE WITNESS: I don't understand it either, Your Honor.

THE COURT: What was your question?

Q. (By Mr. Hole) Okay. Are you familiar that a Rule 11 agreement must be between the party or the party's attorney and that you were not the party's attorney at the time, correct?

A. I told you. Our firm was asked and instructed to obtain a Rule 11 agreement from Plaintiff's counsel in this lawsuit to extend the deadline for filing an answer on behalf of the hospital entities. And we were asked, as attorneys for the hospital entities, to accept service of Chapter 74 reports on behalf of the hospital entities. So if you're telling me, Was I acting as an attorney on behalf of the hospitals and was I authorized to do so? My answer is yes.

Q. The only authorization you got came from the JUA, correct?

A. That's not exactly right because --

Q. What is exactly right?

A. Because Coleen Fadin was copied on the e-mail related to the Rule 11 agreement and she knew what was going on. She knew exactly the fact that the hospitals JUA and UHS and her wanted us to represent the hospital entities and that's why we obtained the extension of time for the answer to be filed, hoping that the summary judgment that we filed on behalf of the group would be granted; at which time they wanted our firm because we'd be freed up to go ahead and represent the hospital entities.

Q. My question is --

THE COURT: Just out of -- just so that my

for the purpose of receipt of the Chapter 74 expert reports, yes; I had been instructed to do that on behalf of the hospital entities and I did that. I didn't have any pending instructions at that time, but to that extent, for sure I was representing the hospital.

Q. And so at the time of the deposition, if that was during the period of time when these --

THE COURT: I don't know when the deposition was taken. Can somebody give me a date?

MR. HOLE: Sure.

Q. (By Mr. Hole) Can you give us the date of the deposition that you remember taking in his office in San Antonio?

A. Do you really expect me to remember what day it was? Back in 2013, I suppose.

MR. NIETO: I do not recall the date, Your Honor, but I can find it out though.

MR. MITHOFF: I can represent, Your Honor that his deposition was taken on February the 13th of 2013.

Q. (By Mr. Hole) Were you representing McAllen Medical Center at that time?

THE COURT: You already asked that question. Move on. He's answered the same way multiple times. For the purposes of getting the Rule 11 agreement and

for the purposes of the Chapter 74 reports. He's said that multiple times already. And you've asked that question multiple times now.

MR. HOLE: No, we didn't know the date of the deposition, Judge.

THE COURT: It didn't change the dynamic of what the question was.

MR. HOLE: Okay.

THE COURT: You just added the date.

MR. HOLE: Well, but at that period of time, I don't think they had been asked to.

THE COURT: Move on.

MR. HOLE: Yes. Yes, Your Honor.

Q. (By Mr. Hole) Okay. So at any rate, did you feel you had an attorney/client relationship with McAllen Medical Center with respect to this case, keeping in mind the parameters of the Texas Disciplinary Rules of Professional Conduct?

A. Yes, I definitely had an attorney/client relationship with McAllen Medical Center for the purposes of obtaining a signed Rule 11 agreement, extending the date of the answer deadline and for purposes of accepting the Chapter 74 expert reports.

Q. Now, with respect --

A. I was instructed as their attorney to do that.